**E. Wayne HAGE and the Estate of Jean N. Hage, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 91–1470L.

United States Court of Federal Claims.

Jan. 29, 2002.

Lyman D. Bedford and Michael J. Van Zandt, McQuaid, Metzler, Bedford & Van Zandt, LLP, San Francisco, CA, for plaintiffs.

Dorothy R. Burakreis, with whom was David Shuey, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., for defendant. Eric C. Olson, U.S. Department of Agriculture, and John Payne, Regional Office of the Solicitor, U.S. Department of Interior, San Francisco, CA, of counsel.

Johanna H. Wald, Natural Resources Defense Council, San Francisco, CA, and Professor Joseph Feller, Arizona State University, Phoenix, AZ, for amici curiae State of Nevada Division of Wildlife, National and Nevada Wildlife Federations, Natural Resources Defense Council, and Sierra Club. Thomas D. Lustig, with whom was Beth Wendel, Boulder, CO, for amicus curiae National Wildlife Federation.

David Creekman, Deputy Attorney General, State of Nevada, for amicus curiae R. Michael Turnipseed, State Engineer of Nevada.

## FINAL OPINION: FINDINGS OF FACT

SMITH, Senior Judge.[1]

### BACKGROUND

Plaintiffs, E. Wayne Hage and the Estate of Jean N. Hage, are the owners of the Pine Creek Ranch in Nye County, Nevada. In September 1991, plaintiffs filed this claim alleging constitutional, contractual, and statutory causes of action.[2] In 1996, the court granted in part and denied in part defendant's Motion for Summary Judgment, holding that plaintiffs should have the opportunity to prove whether they "own property rights in the claimed water, ditch rights-of-way and forage and the scope of those rights." *Hage v. United States*, 35 Fed.Cl. 147, 180 (1996) (hereinafter *Hage I*).

In June 1997, the court granted plaintiffs leave to amend their complaint to include a claim for ownership of the surface estate of approximately 752,000 acres of grazing land on federal allotments. On July 6, 1998, the court stayed defendant's Motion to Dismiss or Alternatively for Partial Summary Judgment addressing the plaintiffs' surface estate claim until after a evidentiary hearing on plaintiffs' property interests.

---

1. Chief Judge Loren A. Smith assumed senior status on July 11, 2000.

2. *See Hage v. United States*, 35 Fed.Cl. 147, 156 (1996) (hereinafter *Hage I*) (granting and denying in part defendant's Motion for Summary Judgement); *Hage v. United States*, 35 Fed.Cl. 737 (1996) (hereinafter *Hage II*) (granting *amici* status to environmental groups and Nevada state agencies); *and Hage v. United States*, 42 Fed.Cl. 249 (1998) (hereinafter *Hage III*) (Preliminary Opinion).

Plaintiffs' amended complaint alleges a variety of constitutional takings. As in every takings claim, the court must decide: first, do plaintiffs own the property at issue; second, did the government take the property; and if so, what is the "just compensation" due the plaintiffs. The parties have been unable to stipulate to ownership of the property plaintiffs allege defendant took. That necessitated dividing this proceeding into a series of hearings on the different elements of plaintiffs' claims. This FINAL OPINION: Findings of Fact only addresses the first issue of what property and what water rights plaintiffs owned. The other steps of the takings analysis will be addressed after subsequent proceedings.

In October 1998, the court held a two-week trial to resolve whether plaintiffs own the property at issue. A month after the hearing, the court issued a "Preliminary Opinion" to better focus the parties' post-trial briefing and with the hope of possible settlement. *Hage v. United States,* 42 Fed.Cl. 249 (1998) (hereinafter *Hage III*). As clearly indicated by its title, the draft was meant solely as an expression of the court's initial thoughts, similar to the court's practice of making closing comments from the bench. This court issued the Preliminary Opinion "to streamline and expedite post-trial briefing." *Id.* at 250. It was not meant to be interpreted as a final finding of fact, but merely an expression of the court's thinking at the time. After a thorough review of the parties' post-trial briefs and closing arguments, the court now issues this FINAL OPINION defining what property interests the plaintiffs own for purposes of their taking claim.

With the publication of this FINAL OPINION in the property phase of this case, the court's earlier Preliminary Opinion, *Hage III*, is rescinded except as explicitly reaffirmed herein.

## INTRODUCTION

The property involved in this case is atypical of most takings litigation. It is not land or minerals at a specific time, but rather the usage of water which ebbs and flows throughout the year. The question the court confronted was whether plaintiff had a right to put to beneficial use the water that traveled through certain ditches.

The court was not called upon to determine the chain of title or actual ownership of a pond or lake, but a right of usage defined by historical practice. The law is relatively clear that if plaintiffs stopped using the water, they lost the right to the continued use of that water. Indeed, plaintiffs merely own the right to use all the water they can put to beneficial use.

The two threshold questions in any takings case are: do plaintiffs "possess a property interest, and if so, what is the proper scope of that interest?" *Store Safe Redlands Assoc. v. United States,* 35 Fed.Cl. 726, 734 (1996). Throughout this case, the government has characterized plaintiffs' claims as questions of law to which no finding of facts are needed. The court rejected this argument in its 1996 summary judgment opinion, *Hage I,* and continues to reject it here.

Plaintiffs' case is based on the accepted theory that Western lands are divided into split estates: the federal government retained the mineral rights, and the ranchers owned various surface rights such as: water usage, rights to forage, ditch and pipeline rights of way protected and recognized under the Act of July 26, 1866, and right of access to the above, in the form of easements and/or rights of way for their livestock across the lands or mineral estates of the United States.

Plaintiffs' amended complaint raises the following claims: first, that the suspension and cancellation of their grazing permits deprived them of their right to graze their cattle; second, that they were deprived of their water rights when the Forest Service cancelled and suspended their grazing permits and diverted and used the water on those allotments; third, that defendant took their property interest in the ditch rights-of-way by forbidding plaintiffs to access the ditches; fourth, that non-indigenous elk consumed forage and drank water reserved for their cattle in violation of their property right; fifth, that when the Forest Service impounded plaintiffs' cattle, defendant took plaintiffs' personal property; sixth, that by canceling and suspending portions of their

grazing permit and interfering with their water rights, ditch rights-of-way, and forage, defendant deprived plaintiffs of all economic use of their ranch; and finally, that they are entitled to compensation for improvements they made to federal rangeland pursuant to 43 U.S.C. § 1752(g).

This opinion focuses on these seven claims solely to the extent that the claim is contingent upon plaintiffs ownership of property. All other issues—whether there was a taking, and if so, what just compensation would be for that taking—are deferred.

Based on the evidence presented at trial and a judicial inspection of much of the property in question, this court finds that plaintiffs have established ownership of substantial vested water rights and many Act of 1866 ditch rights-of-way. The court, however, finds that the plaintiffs have shown no evidence and have no legal support to sustain a viable claim for a property interest in grazing permits or a surface estate. Therefore, the court grants defendant's Motion to Dismiss with regard to the surface estate and grazing permits.

## DISCUSSION

### I. JURISDICTION

■ Pursuant to the Tucker Act:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2001). This court has jurisdiction over takings cases where the plaintiff is seeking compensation rather than possession of the land in question. *See Bourgeois v. United States*, 212 Ct.Cl. 32, 35–

36, 545 F.2d 727 (1976) (citing *Malone v. Bowdoin*, 369 U.S. 643, 647 n. 8, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962) and *Carlson v. United States*, 208 Ct.Cl. 1022, 1023, 1976 WL 8259 (1976)). Because this is a suit for just compensation and not "a suit for possession," it is "within the historical jurisdiction of the court." *Bourgeois*, 212 Ct.Cl. at 35 n. 1, 545 F.2d 727.

### A. This Court has Jurisdiction because this is not an *In Rem* Adjudication

■ In September 1998, immediately before the October 1998 evidentiary hearing, the Office of the State Engineer of the State of Nevada filed its final Order of Determination in the ongoing adjudication of water rights in the Southern Monitor Valley.[3] Two days later, R. Michael Turnipseed, the State Engineer for Nevada, filed a Petition for Writ of Mandamus or Prohibition to prevent this court from continuing to exercise jurisdiction over the water rights at issue in this matter. The State Engineer argued that under Nevada law, the filing of the Order of Determination commenced the judicial phase of the state adjudication process, and thereby deprived this court of jurisdiction over the water at issue. *See* NEV. REV. STAT. 533.165 (2001) ("The order of determination, when filed with the clerk of the district court as provided in NRS 533.165, shall have the legal effect of a complaint in a civil action.").

■ The State of Nevada argues that even though the Court of Federal Claims was first in time, Nevada is not prevented from asserting jurisdiction over the water rights adjudication because this court is not proceeding *in rem*. The State further argues that because it has begun *in rem* proceedings, this court should halt its consideration of this case because at bottom the same *res* is at issue. The State, however, misconstrues what the plaintiffs have asked this court to do. Plaintiffs do not seek *in rem* relief from this court. Instead, plaintiffs seek just compen-

---

3. R. Michael Turnipseed, State of Nevada, Office of the State Engineer, *Order of Determination* in the matter of the determination of the relative rights in and to the waters of Monitor Valley—Southern Part (140-B), Nye County, Nevada (Sept. 15, 1998). The state adjudication process began on October 15, 1981, when E. Wayne Hage filed a petition requesting a determination of the relative rights of the claimants to the waters of the Meadow Creek, Barley Creek, Corcoran Creek, Andrews Creek, Pine Creek, Pasco Creek, Mosquito Creek, Barley Creek, and their tributaries, as well as all other waters flowing into or arising in the Southern Monitor Valley.

sation for the losses they incurred when, they allege, the government took their property. As this court noted in *Hage I*, "a title dispute, as part of a taking claim, traditionally does not prevent jurisdiction in this court, assuming jurisdiction otherwise exists." *See Oak Forest, Inc. v. United States*, 23 Cl.Ct. 90 (1991); *M.R.K. Corp. v. United States*, 15 Cl.Ct. 538 (1988). "Moreover, plaintiffs contend that determining title to water is no different than determining title to real property, and the same jurisdictional rules should apply to all forms of property." *Hage I* at 158.

Plaintiffs should not be forced to wait for a determination of whether a taking occurred for Fifth Amendment purposes while the state proceeding winds its way through the courts. Water determination cases can take decades to reach a conclusion. For example, in *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851 (9th Cir.1983), the quiet title action began in 1925 but was not decided until 1980, a span of 65 years. That case was the "comprehensive adjudication ... of the rights of all parties to the Carson's waters," much like the Order of Determination for the Monitor Valley is a comprehensive determination of the water rights for that area. *Id.* at 853.

In the alternative, Nevada argued that the court should, in deference, stay its proceedings until the completion of the judicial phase of the Nevada adjudication. The Federal Circuit denied Nevada's Petition because Nevada could not show extraordinary relief was necessary since it had known this court was exercising jurisdiction for 30 months. *In re*

*Turnipseed*, 173 F.3d 434, slip op. (Fed.Cir. 1998).

At closing arguments Nevada and the government raised these arguments again. In addition, the government renewed its contention that the court need not make any findings of fact in this matter as all of plaintiffs' claims are questions of law.

The government raised a similar point in its Summary Judgment argument, which this court addressed at length in our 1996 Opinion. *See Hage I* at 159. This court distinguished this case from a water rights adjudication because stream adjudications are "creatures" of state law which the states are best able to determine. However, this court can determine whether plaintiffs have *title* to water rights without engaging in a stream adjudication. *See Hage I* at 159, 163.[4] It is also clear that this court can determine title to real property as a preliminary matter when addressing a takings claim. *See e.g., Bourgeois v. United States*, 212 Ct.Cl. 32, 545 F.2d 727 (1976) (stating that in a suit seeking compensation, the court is not denied jurisdiction simply because there is a quiet title issue involved in determining compensation); *Yaist v. United States*, 228 Ct.Cl. 281, 656 F.2d 616 (1981). "Similarly, this court may determine whether plaintiffs have title to a property interest in water as a preliminary matter before addressing whether that property interest has been taken by the government." *Hage I* at 159.

Nor do the McCarran Amendment[5] or *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), "require that a federal

---

4. In Nevada water rights exist independent of stream adjudication. The Nevada Supreme Court has stated that "[m]ost water rights upon the streams of this state are undetermined by any judicial decree or other record. While the right exists, it is undefined. For the state, however, to administer such rights, it is necessary that they should be defined." *Ormsby County v. Kearney*, 37 Nev. 314, 142 P. 803, 806 (1914). Therefore, the Monitor Valley stream adjudication simply defines the parameters of property interests; it does not determine who has title to the water rights at issue. As this court recognized in *Hage I* "the concurrent adjudication of the Monitor Valley has no bearing on the ripeness of the claims before this Court. To hold otherwise would deny citizens of the United States the

protection of the federal Constitution's guarantees and make those guarantees solely dependent upon state law. *Compare In re Slaughter–House Cases*, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872) *with Allgeyer v. Louisiana*, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897) *and Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). *See also Nollan v. Cal. Coastal Comm.*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994)." *Hage I* at 163.

5. 43 U.S.C. § 666.

water suit must always be dismissed or stayed in deference to a concurrent and adequate comprehensive state adjudication." *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 569, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983) *reh'g. denied* 464 U.S. 874, 104 S.Ct. 209, 210, 78 L.Ed.2d 185 (1983). *See also Hage I* at 160; *Duval Ranching Co. v. Glickman*, 965 F.Supp. 1427 (D.Nev.1997) (stating that even where there is an ongoing water rights adjudication, "abstention is always discretionary"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

## B. The Legal Standard in Physical Takings Cases

The Supreme Court has made it clear that a "physical taking occurs when the government's action amounts to a physical occupation or invasion of the property, including the functional equivalent of a 'practical ouster of [the owner's] possession.' *Transp. Co. v. Chicago*, 99 U.S. 635, 642, 25 L.Ed. 336 (1878); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). When an owner has suffered a physical invasion of his property, courts have noted that 'no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation.' *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)." *Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed.Cl. 313, 318 (2001). First, however, the party seeking compensation must prove they own a compensable property interest. *Avenal v. United States*, 33 Fed.Cl. 778, 785 (1995). This court has divided this case into two stages. In addition to proving that they have a compensable property interest, plaintiffs must show that the Government physically took their property and that that property had compensable value.

The defendant seems to argue that the court should not consider this case because there is no value to any water rights or other property the plaintiffs may have. Valuation, however, is a later step in the takings analysis. The parties will be entitled to put on evidence at that time. The court would note

that plaintiffs did, by the undisputed record, run a cattle ranch using the water rights in question for some years. This would seem to indicate positive value. If there was value, and the plaintiffs can by a preponderance of the evidence show what that value was, and that the government's actions amounted to a taking, then the plaintiffs will be entitled to just compensation.

## II. WATER RIGHTS

The court has utilized a three step analysis to determine the water rights at issue in this litigation. First, the court determined what the legal standard is for "vested water rights." Second, the court determined which of the claimed water rights are "vested water rights." Finally, the court determined which of those vested water rights qualify as "1866 ditches." Fundamentally, "[w]hile the owner of a water right has a vested interest in that right, the right itself is something less than the full ownership of property because it is a right not to the corpus of the water but to the use of the water." *Red Canyon Sheep Co. v. Ickes*, 98 F.2d 308, 315 (D.C.Ct.App. 1938). We now tend to understand property rights in a more subtle way than in 1938, as evidenced by interests in pension funds, condominiums and numerous financial instruments.

### A. Vested Water Rights

The plaintiffs proved they have vested water rights in the ditches, wells, creeks, and pipelines listed below that cross their land and grazing areas as well as the Monitor Valley, Ralston, and McKinney allotments.

*1. Nevada Law Controls where it is not Superceded by Federal Law.*

■ It has long been a principle of water law that state law controls where it is not directly superceded by federal law. Indeed, it "is settled that the states may prescribe police regulations applicable to public land areas, so long as the regulations are not arbitrary or inconsistent with applicable congressional enactments." *McKelvey v. United States*, 260 U.S. 353, 359, 43 S.Ct. 132, 67 L.Ed. 301 (1922); *see e.g. Itcaina v. Marble*, 56 Nev. 420, 55 P.2d 625, 630 (1936). In addition, in the 1866 Ditch Rights-of-Way

Act, 43 U.S.C.A. § 661 (1999), the Reclamation Act of 1902, 43 U.S.C. § 371–390g–8 (2001),[6] and the Taylor Grazing Act of 1934, 43 U.S.C.A. § 315 (1998),[7] Congress carefully respected the rights that state law recognized prior to passage of the federal laws.

For example, the Supreme Court recognized that the Reclamation Act "leaves it to the State to say what rights of an appropriator or riparian owner may subsist along with any federal right." *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 736 n. 7, 70 S.Ct. 955, 94 L.Ed. 1231 (1950).[8] The Court concluded that Congress "elected to recognize any state-created rights and to take them under its power of eminent domain" with the Reclamation Act. *Id.* at 739, 70 S.Ct. 955. The Nevada Supreme Court, when examining the intersection of Nevada water law and the Taylor Grazing Act, reiterated that where the federal government has not acted, the state may act. *Ansolabehere v. Laborde*, 73 Nev. 93, 310 P.2d 842, 845 (1957) (Nevada Stockwatering Act of 1925 superceded where it overlaps with the Taylor Grazing Act). Therefore, federal law directs this court to state law to determine whether or not a water right exists.

### 2. Vested Water Rights Under Nevada Law

■ Under Nevada law to have a vested water right, the plaintiffs must have the right to "divert water by artificial means for beneficial use from a natural spring or stream." *In re Waters of Duff Creek*, 66 Nev. 17, 202 P.2d 535, 537 (1949). A vested water right becomes "fixed and established ... either by actual diversion and application to beneficial use or by appropriation ... and is a right

which is regarded and protected as property." *Id.* Appropriation of the water occurs when actual "acquisition from the government by diversion and use" is made by a party. *Id.* at 538; *see also Walsh v. Wallace*, 26 Nev. 299, 67 P. 914, 917 (1902) ("To constitute a valid appropriation of water ... there must be an actual diversion of it, with intent to apply it to a beneficial use, followed by an application to such use in a reasonable time."); *Reno Smelting, Milling & Reduction Works v. Stevenson*, 20 Nev. 269, 21 P. 317 (1889). Therefore, for an appropriation to occur, "there must co-exist 'the intent to take, accompanied by some open, physical demonstration of the intent, and for some valuable use' ... The outward manifestation is most often evidenced by a diversion of the water from its natural source prior to the use; ... but it also can be evidenced in other ways, for example ... by watering livestock directly from the source." *Hunter v. United States*, 388 F.2d 148, 153 (9th Cir.1967) (Citations omitted).

■ The Nevada Supreme Court has recognized that though the manner of acquiring the water from the government may change as the law changes, "the character of" appropriation "remains, as ever, an acquisition of a right to use water from the government." *In re Waters of Duff Creek*, 202 P.2d at 537. Nevertheless, the use of the water cannot include any waste or be unreasonable, *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 854 (9th Cir.1983), and one who appropriated a right to use the water can lose that right by voluntarily abandoning it. *See In re Manse Spring*, 60 Nev. 280, 108 P.2d 311, 315 (1940).

---

6. "Nothing in this act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior ... shall proceed in conformity with such laws ..." 43 U.S.C. § 383.

7. "Nothing in this subchapter shall be construed in any way to diminish, restrict, or impair any right which has been heretofore or may be hereafter initiated under existing law validly affecting the public lands ..." 43 U.S.C.A. § 315 (1998). The Taylor Grazing Act had two purposes: 1) to provide for the best use of the public range and

2) to define the rights of stock grazers and protect them from interference. *See Red Canyon Sheep Co. v. Ickes*, 98 F.2d 308, 314 (D.C.Ct.App. 1938).

8. It is important to note that Nevada uses a system of appropriation rather than riparian water use as do most Western states. In *Bergman v. Kearney*, 241 F. 884 (D.Nev.1917), the district court stated clearly that riparian rights had "no place in the law of Nevada." *Id.* at 893. In addition, the court recognized that, "[w]ater is not capable of permanent private ownership; it is the use of water which the state permits the individual to appropriate." *Id.*

### 3. The Hages' Water Rights

■ The court now turns its attention to whether plaintiffs have proven they acquired vested water rights in any of the claimed water sources. In reaching the following determinations, the court has relied heavily on the evidence presented at trial through expert testimony and exhibits. The parties are to be commended for the quality of the evidence they presented at trial.

### a. *Monitor Valley Water Rights*

As this court noted in its Preliminary Opinion, the court finds the Order of Determination of the Nevada State Engineer [9] compelling and "incorporates by reference the findings of ownership contained at pages 130–172 of the State Engineer's report on the Southern Monitor Valley." *Hage III* at 250. This court's conclusions regarding the Southern Monitor Valley, however, are based upon the strength of the Engineer's testimony and report, not on legal deference, since this factual issue is considered *de novo*. It is also based on this court's own review of the evidence and testimony presented at trial.

Plaintiffs introduced the State Engineer's Order of Determination, and then the State Engineer, Mr. R. Michael Turnipseed, testified about the examinations his office made of the sites in question prior to issuing the determination. In addition, the court made a site visit to many of the locations of the streams and ditches in question.

As in every trial, the court must determine what the facts are, often adopting the evidence of one party or the opinion of one expert witness. Due to the specific nature of the property rights at stake, the type of measurements involved in accurately describing water rights, and the court's acknowledgment of the Nevada State Engineer's expertise in mapping such rights, the court incorporates the State Engineer's descriptions of the property for accuracy and clarity.[10]

This court finds that plaintiffs showed by a preponderance of the evidence that the plaintiffs and their predecessors appropriated and maintained a vested water right in the following bodies of water in the Southern Monitor

9. In Nevada, the state engineer has been tasked with determining who owns rights to the water within the state. In *Bergman v. Kearney*, 241 F. 884 (D.Nev.1917), the district court outlined the multiple steps that the state engineer must take to make a determination. The engineer

must investigate the flow of the stream, the diverting ditches, the lands irrigated, make surveys and prepare maps showing the course of the stream, the location of each ditch or canal, the area, outline and character of culture of each parcel of land upon which the water of the stream has been used, and gather such other data and information as may be essential to a proper determination of water rights in the stream.

*Bergman*, 241 F. at 884 referencing §§ 20–21 of the Nevada Water Law of 1913 (currently NEV. REV. STAT. 533.100 & 533.105 (2001)). All interested parties are then given an opportunity to file proofs of their ownership of the water. The State Engineer collects, prints, and distributes the proofs to all interested parties. Those parties may contest the proof in writing before the State Engineer issues his Order of Determination. The Order of Determination when filed becomes the equivalent of a complaint in the Nevada district court where the water is located.

The court recognizes there is an on-going state adjudication where both parties had an opportunity to present evidence about who owns the water in question. On October 15, 1981, the Hages filed a petition with the State Engineer requesting a determination of ownership rights of various bodies of waters within the Monitor Valley B Southern Portion. R. Michael Turnipseed, State of Nevada, Office of the State Engineer, *Order of Determination* in the matter of the determination of the relative rights in and to the waters of Monitor Valley B Southern Part (140–B), Nye County, Nevada at 1 (Sept. 15, 1998). The State Engineer accepted the petition on June 15, 1982, and began taking proofs of ownership that fall. *Id.* at 2. The filing deadline for the proofs was extended repeatedly to February 28, 1994. *Id.* at 4. Field investigations were conducted the summers of 1994 and 1995 with a preliminary order of determination being issued on February 15, 1996. During the field investigations, the State Engineer and his staff measured the streams and their basins and the water flow rate in cubic feet per second. *See id.* at 7–12. They also analyzed whether the streams would meet the crop water needs during the summer and when the streams would dry up. *See id.* After receiving objections to the preliminary order, the final order was issued on September 15, 1998, immediately prior to the original trial in this case. A bench trial was held before the Nye County District Court on November 1, 2001.

10. The pages of the report referred to here (pages 130–172) are appended to this FINAL OPINION.

Valley. In addition to certificates of appropriation that were entered into evidence, the plaintiffs also submitted an exhaustive chain of title which showed that the plaintiffs and their predecessors-in-interest had title to the fee lands where the following springs and creeks are located: [11]

- *Andrews Creek,* which was appropriated with a priority date of 1874,[12]
- *Barley Creek,* which was appropriated with priority dates of 1874 and 1915,
- *Combination Springs,* which was appropriated with a priority date of 1866,
- *Meadow Canyon Creek,* which was appropriated with priority dates of 1874 and 1911,
- *Mosquito Creek,* which was appropriated with priority dates of 1874 and 1917,
- *Pasco Creek,* which was appropriated with priority dates of 1869 and 1911,
- *Pine Creek,* which was appropriated with priority dates of 1874 and 1972,
- *Smith Creek,* which was appropriated with a priority date of 1874, and
- *White Sage Ditch,* which was appropriated with a priority date of 1878.

#### b. *Ralston and McKinney Allotments*

This court finds that plaintiffs presented evidence at trial that showed by the preponderance of evidence that the plaintiffs and their predecessors appropriated and maintained a vested water right in the following bodies of water on the Ralston and McKinney allotments. In addition to certificates of appropriation that were entered into evidence, the plaintiffs also submitted an exhaustive chain of title which showed that the plaintiffs and their predecessors-in-interest had title to the fee lands where the following springs and creeks are located.

##### 1. **Ralston Allotments**

The plaintiffs have a vested water right to the following bodies of water in the Ralston

allotment based either on the date of appropriation or prior beneficial use of their predecessors-in-interest:

- *AEC Well:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of December 26, 1980.
- *Airport Well:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of March 19, 1981.
- *Baxter Spring:* The state engineer issued a certificate of appropriation to United Cattle and Packing Company, a predecessor in interest of the plaintiffs, with a priority date of October 5, 1917.
- *Black Rock Well:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of July 23, 1982.
- *Cornell Well:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of December 26, 1980.
- *Frazier Spring:* The state engineer issued a certificate of appropriation to United Cattle and Packing Company with a priority date of February 17, 1927.
- *Henry's Well:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of April 27, 1981.
- *Humphrey Spring:* The state engineer issued a certificate of appropriation to United Cattle and Packing Company with a priority date of December 17, 1917.
- *Pine Creek Well:* The state engineer issued a certificate of appropriation to Frank Arcularius with a priority date of January 11, 1950.
- *Ray's Well:* The state engineer issued a certificate of appropriation to United Cattle and Packing Company with a priority date of February 17, 1927.
- *Rye Patch Channel:* The state engineer issued a certificate of appropriation to

---

11. Explicit boundaries and dimensions of the plaintiffs' Monitor Valley property interests are detailed in Appendix A.

12. The plaintiffs proved that some of these bodies of water are also 1866 ditches. To find that an 1866 Ditch exists, the plaintiff had to prove at trial that the ditch was in place prior to 1907

when the Toiyabe National Forest was created by President Theodore Roosevelt. *See Hage I* at 161; *see also* Proclamation dated April 15, 1907. The priority appropriation dates establish how far back in time the State Engineer was able to trace the water's ownership rights through the plaintiffs' predecessors in interest.

Frank Arcularius, a predecessor in interest of the plaintiffs, with a priority date of November 12, 1926.

- *Saulsbury Well:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of April 27, 1981.
- *Silver Creek Well:* The state engineer issued a certificate of appropriation to Frank Arcularius with a priority date of February 10, 1950.
- *Snow Bird Spring:* The state engineer issued a certificate of appropriation to United Cattle and Packing Company with a priority date of June 7, 1918.
- *Spanish Spring:* The state engineer issued a certificate of appropriation to United Cattle and Packing Company with a priority date of December 17, 1917.
- *Stewart Spring:* The state engineer issued a certificate of appropriation to Mrs. O.C. Stewart, a predecessor in interest of the plaintiffs, with a priority date of November 25, 1931.
- *Well No. 2:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of December 26, 1980.
- *Well No. 3:* The state engineer issued a certificate of appropriation to plaintiffs with a priority date of December 26, 1980.

### 2. McKinney Allotment

The plaintiffs have a vested water right to the following bodies of water in the McKinney allotment based either on the date of appropriation or prior beneficial use of their predecessors-in-interest:

- *Caine Springs:* The state engineer issued a certificate of appropriation to Mrs. Milo A. Caine, a predecessor in interest of the plaintiffs, with a priority date of October 8, 1919.
- *Cedar Corral Springs:* The state engineer issued a certificate of appropriation to Milo A. Caine with a priority date of February 10, 1920.

- *Mud Springs:* The state engineer issued a certificate of appropriation to Milo A. Caine, a predecessor in interest of the plaintiffs, with a priority date of October 8, 1919.
- *Perotte Springs:* The state engineer issued a certificate of appropriation to Milo A. Caine with a priority date of February 10, 1920.

### B. Ditch Rights–of–Way and Forage Rights

Next, the court turns its attention to whether those water rights have accompanying ditch rights-of-way and forage rights. The plaintiffs claim that the government took their property when it prevented them access to their 1866 Act ditches.[13]

#### 1. Determining whether a Ditch Right–of–Way existed.

The court has developed a three-step analysis to determine whether plaintiffs have a ditch right of way. First, the court must determine whether plaintiffs own 1866 Act Ditches. Second, the court must examine the proof submitted for each ditch to determine whether the ditch was established prior to 1907, when the land the ditches are on became part of the Toiyabe National Forest Reserve. Finally, the court must determine the extent of the right of way.

In its Preliminary Opinion, the court found that the Hages were entitled to ditch rights-of-way equal to 50 feet on each side of the ditches or canals they own under Section 9 of the Act of July 26, 1866, 43 U.S.C. § 661. *See Hage III* at 250–51. Under a common sense analysis, the court also found "that implicit in a vested water right based on putting water to beneficial use for livestock purposes was the appurtenant right for those livestock to graze alongside the water." *Hage III* at 251.

At trial and in post-trial briefing, the government has opposed the plaintiffs' owner-

---

13. This is a physical takings claim because plaintiffs argue the government has physically barred them from the land, with threat of prosecution for trespassing if they enter federal lands to maintain their ditches. This is not an idle threat, because the government unsuccessfully prosecut-

ed Mr. Hage for maintaining the White Sage Ditch. The government obtained a criminal conviction against Mr. Hage that was overturned by the Ninth Circuit Court of Appeals. *See United States v. Seaman,* 18 F.3d 649 (1994).

ship claims under the Act of 1866 as unripe because plaintiffs failed to seek a regulatory determination that the ditches were subject to the Act and never sought a USFS special maintenance permit when engaged in clearing and cleaning work close to the outer limits of the claimed right-of-way. Alternatively, defendant contended that the right-of-way is much more limited than the scope recognized by the court. Defendant and *amici* challenged plaintiffs' entitlement to forage rights surrounding the 1866 ditches, arguing that Nevada law does not recognize forage rights as a component of water rights.

Many statutes with similar purposes to the 1866 Act incorporate a consistent 50 foot right-of-way for ditches. *See* Act of 1891, 43 U.S.C. § 946; Act of 1895, 43 U.S.C. § 956; and Act of 1901, 43 U.S.C. § 959. In addition, there was undisputed testimony at trial about the historic use of these ditches for livestock watering and irrigation. There was also persuasive testimony about the intent of Congress when it passed these acts. Specifically, the United States intended to "respect and protect the historic and customary usage of the range." *See Hage III* at 251. Upon careful consideration of the trial evidence and evaluation of applicable law, the court reaffirms its findings regarding ditch rights-of-way and the forage rights.

### 2. The 1866 Ditch Rights–of–Way Act

In the Ditch Rights–of–Way Act, Congress chose not to enact detailed dimensions of ditch rights-of-way. Instead, Congress expressly deferred to state and local custom and usage:

> Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and *the same are recognized and acknowledged by the local customs, laws, and the decisions of courts,* the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the

construction of ditches and canals for the purposes herein specified is acknowledged and confirmed ...

43 U.S.C. § 661 (1866) (emphasis added). Under the 1866 Act, Congress explicitly drafted the statute to leave local definitions of water and ditch rights in place. The Act's legislative history shows that Congress believed that Western water and easements law generally allowed a right-of way for 50 feet on both sides of a ditch.[14]

The Act of 1866 was introduced in the Thirty–Ninth Congress on March 8, 1866, as "an act granting the right of way to ditch and canal owners in the State of California over public lands." 1866 Cong. Globe 1259. The floor debates in the House and Senate contain a detailed discussion of the 50 foot-long rights of way. The version reported out of the Committee on Mines and Mining by the Chairman and original sponsor, Representative William Higby of California, provided that under the first section:

> the owners of ditches, flumes, canals, or aqueducts for mining, mechanical, or agricultural purposes, shall have the right of way over the public lands ... so long as those works are to be used for said purpose. The second section provide[d] that in order to give free access to such canals, flumes, and ditches, for the purpose of repairs and construction, the owners of the same are granted the use and occupation of a strip of land on each side of their respective works three rods[15] in width.

1866 Cong. Globe 3141 (June 13).

The House Committee recommended several amendments to the original language, one of which read: "Amend the second section by striking out the words 'canals, flumes, and ditches' and inserting in lieu thereof the words 'ditch, flume, canal, or aqueduct,' also by striking out the words 'three rods in width' and inserting 'fifty feet in width.'" 1866 Cong. Globe 3141 (June 13). The

---

14. Indeed, when asked at trial why he allowed Mr. Seamun to clear trees from 50 feet on each side of the White Sage Ditch, Mr. Hage stated it was because the 1866 Act did not clearly delineate the distance but all other laws from that time allowed a fifty foot area on each side of a ditch.

15. Three rods is the equivalent of 49.5 feet. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1020, 1338 (1984).

House agreed to the amendment, and on Representative Higby's motion the bill was extended to include Nevada and Oregon in addition to California. In his floor remarks, Congressman Higby explained that the 50–foot ditch right-of-way was simply a codification of pertinent state and local law in the Pacific States: "We propose, in the bill as amended, that they shall have the right of way as they now have, respecting at the same time the rights of possession as established by the laws of the State." 1866 Cong. Globe 3141 (June 13).[16] The dimensions used in the House's version of the bill demonstrate Congress understood and accepted the local law and custom when it drafted, debated, and passed the 1866 Act.

At the same time, the amended House version also conditioned the duration of the estate in water and ditch rights on the use of the rights for mining, agricultural, and other purposes specified in the legislation.[17] See 1866 Cong. Globe 3141 (June 13). Representative Higby likewise confirmed this limitation on the House floor "that the right of way shall be guaranteed by the General Government so long as these ditches, [etc.], shall be used for the purposes named in the bill." Id.

In the Senate, Senator William Morris Stewart of Nevada introduced a substitute amendment that removed limitations on titles to mining, water, and ditch rights. See 1866 Cong. Globe 3228 (June 18). Unlike its House counterpart, the Senate bill contained

no dimensions for the right of ways; it was ultimately enacted into law. The Senate's Amendment acknowledged the rights recognized under state and local law like the amended House bill. See, e.g., 1866 Cong. Globe 3227 (June 18).[18] Because the legislative intent behind the rights-of-way provisions was to honor the scope of property rights as defined by their independent sources, Congress' failure to incorporate the 50–foot limitation did not alter the fifty foot scope.[19] Defining ditch rights-of-way in a federal statute would be redundant where the statute incorporates the definition of these rights under non-federal law. The legislative intent of incorporation is clear, and therefore, the Act of 1866 must be interpreted to allow for ditch rights-of-way of 50 feet on each side of a ditch.

As the Supreme Court recognized in Jennison v. Kirk, 98 U.S. 453, 25 L.Ed. 240 (1878), the purpose of the 1866 Act was to "give the sanction of the United States, the proprietor of the lands, to possessory rights, which had previously rested solely upon the local customs, laws, and decisions of the courts, and to prevent such rights from being lost on a sale of the lands." Jennison, 98 U.S. at 457, 25 L.Ed. 240. See also Hunter v. United States, 388 F.2d 148, 151 and n. 6 (1967). The Supreme Court interpreted the Act to say that:

> whenever rights to the use of water by priority of possession had become vested, and were recognized by the local customs,

16. The Act of 1866 was not the only law to recognize 50 feet rights of way for the purposes of maintaining and operating irrigation ditches and canals. See Act of March 3, 1891, 26 Stat. 1095 § 18. The Livestock Reservoir Siting Act of 1891 recognized rights-of-way for up to 160 acres. See discussion infra.

17. "Provided, That the possessory rights of others to public lands adjoining such ditch, flume, canal, or aqueduct, previously acquired under the law of the State or of the United States shall not be disturbed by the passage of this act: And provided further, that the use and occupation hereby granted shall be for the purpose named and no other." 1866 Cong. Globe 3141 (June 13).

18. "It furnishes the means to actual settlers of acquiring title to their homesteads by segregating the agricultural from the mineral lands, and confirms the rights to the use of water and the right of way for ditches as established by local law and

decisions of the court. In short, it proposes no new system, but sanctions, regulates, and confirms a system to which the people are devoutly attached, and removes a cloud of doubt and uncertainty ..." 1866 Cong. Globe 3227 (June 18).

19. "This falls within a well-recognized exception to the rejection of amendments, namely, that amendments may be rejected because the bill already includes those provisions." See SUTHERLAND STAT. CONST. § 48:18. As a matter of property rights law, this conclusion should not be surprising in light of the Supreme Court's long-standing recognition that these rights are usually defined by state law and other sources independent of federal protections for private property. See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (due process protection).

laws, and decisions of the courts, the owners and possessors should be protected in them; and that the right of way for ditches and canals incident to such water-rights, being recognized in the same manner, should be 'acknowledged and confirmed.' *Jennison,* 98 U.S. at 460, 25 L.Ed. 240. The Supreme Court also held that the 1866 Act was a "voluntary *recognition of a pre-existing right of possession,* constituting a valid claim to its continued use, [rather] than the establishment of a new one." *Broder v. Natoma Water & Mining Co.,* 101 U.S. 274, 276, 25 L.Ed. 790 (1879) (emphasis in original). The Court has also established the principle that states may determine the rights of an appropriator of water and how that right interacts with federal rights to water. *United States v. Gerlach Live Stock Co.,* 339 U.S. 725, 734, 70 S.Ct. 955, 94 L.Ed. 1231 (1950).

### 3. Establishing a 1866 Act Ditch and Right-of-way

Plaintiffs must demonstrate that their predecessors-in-interest of the various parcels of land that constitute Pine Creek Ranch (at the time of the alleged taking) established and used the 1866 Act ditches prior to 1907 when the land was removed from the public domain and became part of the Toiyabe National Forest Reserve. *See Hage I* at 161. They must also show that the rights-of-way have been maintained and the ditches have been used since 1907.

Plaintiffs proved that only a subset of their vested water rights actually constitute 1866 Act Ditches. At trial plaintiff presented evidence the court found persuasive that the following ditches are 1866 Act Ditches:

- *Andrew's Creek Ditch* was built in May 1876 and entered into the survey books of Nye County on June 30, 1876. The defendant admits that the Andrews Creek Ditch is an 1866 Ditch.

- *Barley Creek Ditch* was appropriated to a Hage predecessor in interest by the Nevada State Engineer in 1915 and evidence was presented that the ditch and extension ditch existed prior to 1877.

- *Borrego Ditches:* The easement to this ditch dates to 1866.

- *Combination Pipeline* was built by the BLM in 1965 on an easement from Frank Arcularius. The title records show that the land Mr. Arcularius owned had the vested water rights to all water on the land since 1870, and plaintiffs proved the easement dates back to 1866.

- *Corcoran Ditch* was constructed between 1880 and 1889, with the proof of appropriation filed on September 28, 1912.

- *Meadow Creek Ditch:* The Meadow Canyon Creek and its tributaries have been in the possession of the Hages and their predecessors in interest since at least 1902, and probably 1868. The Ditch was constructed between 1902 and 1912. While the State Engineer's office recommended that the ditch be considered abandoned on March 8, 1996, the court saw evidence of the ditch during its site visit in 1998.

- *Pasco or Tucker Ditch* was built in 1869 and expanded in 1878.

- *Pine Creek Irrigating Ditch* was built and registered by Mr. E.H. Kincaid, a predecessor-in-interest of the plaintiffs, on April 29, 1876.

- The *Spanish Spring Pipeline* was built in 1959 but plaintiffs' predecessors-in-interest acquired a vested interest to the water in 1870.

- *White Sage Irrigation Ditch* was recorded by the Nye County Clerk at the request of E.H. Kincaid on April 29, 1878, and built that summer. The White Sage Irrigation Ditch was part of the Certificate of Appropriation granted to the Nye County Land & Livestock Company by the Nevada State Engineer's Office on April 20, 1914.

The defendant argues that only Andrew's Ditch is an 1866 Act Ditch, because none of the others can be definitively proved to be in their original ditch beds. The court examined many of these ditches during a site visit. The site visits made it clear that the ditches—while maintained by the owners—are subject to floods, wash outs and other forces of nature.[20] Therefore, it would be an unrea-

---

20. Including an ill-fated insertion of beavers by the Forest Service in the late 1940's through the

sonable burden to require the plaintiffs to prove that all the ditches were in their exact points of departures and beds as they were when built in the late 1800s.

The court finds, however, that plaintiffs failed to meet their burden of proof that the following were actually 1866 Act Ditches.

- *Baxter Spring Pipeline:* Plaintiffs claim the pipeline easement dates back to 1870. Nevada State Engineer issued a Certificate of Appropriation to the Hages' predecessor in interest with a date of priority of October 5, 1917. The Pipeline was built in 1956 and extended in 1963.

- *Corcoran Pipeline* was completed in 1965 by a Hage predecessor.

- *Desert Entry Ditch:* Plaintiffs rely on two exhibits the Defendant submitted at trial. Both are applications for Special Use permits: one states that a ditch existed in 1973 and the other states the Hages' intent to maintain it. There is no evidence of when the ditch was created, but plaintiffs claim the easement was created in 1973.

- *Hot Well Ditch:* The easement to this ditch dates to 1968, 61 years after the Toiyabe Forest was reserved from the public domain.

- The *Mount Jefferson Spring and Pipeline* were installed in 1973 by the BLM.

- The *Salisbury Well Pipeline* was created in 1966 at the request of Frank Arcularius.

Thus, the court finds that it must uphold in part and reject in part the plaintiffs' claims to 1866 Act Ditch rights-of-way.

### C. Vested Rights–of–Way may be subject to Reasonable Regulation where they run across Federal Land.

 Because the Hages' have vested rights of way under the 1866 Act, this court must then address their contention that they are not subject to Forest Service regulations. As the District Court in Nevada recognized, "a vested right-of-way which runs across Forest Service lands is nevertheless subject to reasonable Forest Service regulation, where 'reasonable' regulation is defined as regulation which neither prohibits the ranchers from exercising their vested rights nor limits their exercises of those rights so severely as to amount to a prohibition." *Elko County Bd. of Supervisors v. Glickman,* 909 F.Supp. 759, 764 (D.Nev.1995). Under the 1866 Act, vested ditch rights-of-way are subject to Forest Service regulations, including the need to obtain special use permits when necessary. *See* 43 U.S.C. § 1761(b)(3) and Part 2800. According to the defendants, normal maintenance includes minor trimming and clearing of vegetation around the ditches. The defendants argue that any other maintenance can only be done after a special use permit is obtained from the Forest Service. *See* 43 C.F.R. § 2801.1–1.

The government cannot deny plaintiffs access to their vested water rights without providing a way for them to divert that water to another beneficial purpose if one exists. The government cannot cancel a grazing permit and then prohibit the plaintiffs from accessing the water to redirect it to another place of valid beneficial use. The plaintiffs have a right to go onto the land and divert the water.[21]

Whether the requirement of a special use permit to maintain a ditch right-of-way is a taking is a question this court can most appropriately answer in the takings phase of this case, which the court addresses in the Next Steps section of this FINAL OPINION: Findings of Fact.

### D. The Forest Service Manual does not have the Force of Law

 The government's federal law argument does not squarely resolve the interpre-

---

early 1950s.

**21.** Yet Mr. Hage was found guilty by the U.S. District Court for Nevada for doing just that: allowing an employee to cut trees from a 50 foot section alongside each side of an 1866 Ditch as he maintained it. As Mr. Hage testified at trial, he reached the 50 foot number by a common

sense analysis of the laws that he was told would apply to the ditches. His conviction was overturned by the Ninth Circuit Court of Appeals. *See United States v. Seaman,* 18 F.3d 649 (1994). At trial the government did not dispute that the pinions and junipers cut were trash trees.

tive problems with the statute at issue. Instead, the government directs the court to look at the USFS Manual as an authoritative pronouncement on the scope of the right-of-way easement rather than at the 1866 Act. The government contends that plaintiffs should be denied the 50–foot rights-of-way because Mr. Hage exceeded the dimensions appropriate for normal, reasonable maintenance as defined under the Manual and the Forest Service practice. This contention must be rejected for the simple reason that the Forest Service Manual does not have the force of law. It can not alter a statutory right.

Indeed, the Supreme Court stated this principle quite clearly a year ago in *Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), where the Court stated that "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, *agency manuals*, and enforcement guidelines, all of *which lack the force of law*—do not warrant *Chevron*-style deference." *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655 (emphasis added). The Manual was created to guide Forest Service personnel, not to govern private citizens in the exercise of their rights. *See Western Radio Serv. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir.1996) ("Manual and Handbook do not have the independent force and

effect of law.") [22] Such agency pronouncements on the statutes are merely " 'entitled to respect' under [the Supreme Court's] decision in *Skidmore v. Swift & Co.*, but only to the extent that those interpretations have the 'power to persuade.' " *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655 (citation omitted).

■ Although the Preliminary Opinion found persuasive the Manual's position that determining the scope of rights-of-way requires a factual inquiry, *see Hage III*, the substantive provisions and Forest Service practices regarding the scope of the rights-of-way work no such persuasive effect. The Forest Service is without authority to adjudicate title to rights-of-way under the 1866 Act, and maintenance permitting for ditches has no adjudicatory implications for these rights. Permitting decisions by Forest Service rangers in Nevada do not create some kind of ditch common law, as the government implies. The legal questions regarding the scope of the Act of 1866 rights are the province of the judiciary, not the Forest Service field personnel.

■ The Government emphasizes that plaintiffs did not confirm with the Forest Service that any of the ditches were 1866 Act ditches and did not seek authorization to maintain those ditches. However, there is no

---

**22.** The Ninth Circuit's manifold reasons in *Western Radio Services Company*—which includes references to binding Federal Circuit precedent—refute the government's theory and are worth quoting here:

First, the Manual and Handbook are not substantive in nature. In *United States v. Doremus*, 888 F.2d 630, 633 n. 3 (9th Cir.1989), *cert. denied*, 498 U.S. 1046, 111 S.Ct. 751, 752, 112 L.Ed.2d 772 (1991), we explained in dictum that "the Forest Service Manual merely establishes guidelines for the exercise of the Service's prosecutorial discretion; it does not act as a binding limitation on the Service's authority." *See also Stone Forest Indus. v. United States*, 973 F.2d 1548, 1551 (Fed.Cir. 1992) (Manual does not have force and effect of law); *Lumber, Prod. and Indus. Workers Log Scalers Local 2058 v. United States*, 580 F.Supp. 279, 283 (D.Or.1984) (Manual is "basically a large compilation of guidelines ... [and] not a 'substantive' rule" (internal quotations and citations omitted)). The Manual and Handbook are a series of "[p]rocedures for the conduct of Forest Service activities." 36 C.F.R. § 200.4(b), (c)(1) (1995).

The Manual and Handbook are not promulgated in accordance with the procedural requirements of the Administrative Procedure Act. Neither is published in the Federal Register or the Code of Federal Regulations. *See Parker v. United States*, 448 F.2d 793, 797 (10th Cir.1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972). They are not subjected to notice and comment rulemaking; they are not regulations. *Hi–Ridge Lumber Co. v. United States*, 443 F.2d 452, 455 (9th Cir. 1971) (Manual "does not rise to the status of a regulation").

Nor are the Manual and Handbook promulgated pursuant to an independent congressional authority. The National Forest Management Act authorizes the Secretary to promulgate regulations, but the Manual and the Handbook are not regulations from the Secretary. 36 C.F.R. § 200.4(d)(1) (1995) (Chief of Forest Service promulgates rules in Manual and Handbook). The Manual and Handbook provisions are contemplated in a Service regulation, not in a congressional statute. *W. Radio Serv. Co.*, 79 F.3d at 901.

requirement under the law to seek permission to maintain an 1866 Ditch. Instead, that right is expressly reserved in the 1866 Act. 43 U.S.C. § 661. The government also argues that a fifty-foot right-of-way on either side of the ditches is unreasonable under the local maintenance and construction practices and the needs of the Hages and their predecessors in interest. Further, the government argued that the scope of the rights-of-way is a matter of federal law. *See United States v. Oregon*, 295 U.S. 1, 27–28, 55 S.Ct. 610, 79 L.Ed. 1267 (1935) and *Adams v. United States*, 3 F.3d 1254, 1260 (9th Cir.1993). The legislative history, as explored above, makes it clear that Congress intended to give those with 1866 Act ditches access to those ditches for construction and maintenance. Anything less might make those same ditches worthless.[23]

The BLM and Forest Service can attempt to place right-of-way restrictions on ranchers, but it will be next to impossible to enforce those against cattle. Ranchers let cattle drink straight from streams rather than build diversions for pragmatic, economic reasons:

> "[T]he owner cannot make cattle drink; if he built the most expensive pipe conceivable and the most beautiful trough that human ingenuity and skill could produce, for the cattle to drink out of, there would be no way of compelling the cattle to drink out of the trough, instead of out of a puddle made by the overflow from the trough. No doubt it was this consideration which led the hardy and practical live stock men of a half a century ago to adopt the well and widely established custom which the court found to prevail."

*Steptoe Live Stock Co. v. Gulley*, 53 Nev. 163, 295 P. 772, 776 (1931). While the BLM might commission a genetically engineered cow that will drink only where preprogrammed, until then it is highly unlikely that you will be able to make a cow differentiate between water they can drink because it is on base property and water that it is attached to public land. For centuries, no one has been able to lead the cow without it drinking at will. In a sense, the point of use for the water is the cow's head, which is an extension of the base ranch.

Therefore, for the reasons stated the court upholds in part and denies in part the plaintiffs' claims to three kinds of property: 1) vested water rights in the Southern Monitor Valley; 2) vested water rights in the Ralston and McKinney allotments; and 3) 1866 Act Ditch rights-of-way.

## III. GRAZING PERMITS

██ The plaintiffs argue that the government took their property when it revoked their grazing permits. This disregards, however, a long line of cases and the Taylor Grazing Act itself, 43 U.S.C. § 315 *et seq.* (1934), which establish the principle that grazing permits are merely a license to use the land rather than an irrevocable right of the permit-holder.

Historically, the public lands of the United States were "free to the people who seek to use them, where they are left open and uninclosed [stet], and no act of government forbids this use." *Buford v. Houtz*, 133 U.S. 320, 326, 10 S.Ct. 305, 33 L.Ed. 618 (1890). *But see Leo Sheep Co. v. United States*, 440 U.S. 668, 686 n. 24, 99 S.Ct. 1403, 59 L.Ed.2d 677. It was, however, also clear that the government's "failure to object ... did not confer any vested right on the [users], nor did it deprive the United States of the power of recalling any implied license under which the land had been used for private purposes." *Light v. United States*, 220 U.S. 523, 535, 31 S.Ct. 485, 55 L.Ed. 570 (1911).[24]

In *United States v. Fuller*, the Supreme Court held that the Fifth Amendment did not require the government to pay respondent, a large cow-calf rancher, "for that element of value [in his land] based on the use of respondent's fee lands in combination with the Government's permit lands." *United States*

---

**23.** See Curtis H. Lindley, A Treatise on the American Law Relating to Mines and Mineral Lands § 530 vol. II (3d ed.1988).

**24.** The Court went on to say "the United States can prohibit absolutely or fix the terms on which its property may be used. As it can withhold or reserve the land, it can do so indefinitely." *Light*, 220 U.S. at 536, 31 S.Ct. 485.

v. *Fuller*, 409 U.S. 488, 493, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973). While *Fuller* is most applicable to the takings phase of this case because it directly addresses whether the government has a duty to reimburse grazing permit holders, it establishes that grazing permits are licenses rather than rights. The Federal Circuit extended *Fuller* in *Alves v. United States*, 133 F.3d 1454 (Fed.Cir.1998). In *Alves* the court held that there is no difference between grazing permits and grazing preferences because neither is a compensable property interest under the Fifth Amendment. *Alves*, 133 F.3d at 1457.

More recently, in *Public Lands Council v. Babbitt*, 529 U.S. 728, 120 S.Ct. 1815, 146 L.Ed.2d 753 (2000), the Supreme Court reaffirmed that the Secretary of the Interior has "consistently reserved the authority to cancel or modify grazing permits." *Public Lands Council*, 529 U.S. at 743, 120 S.Ct. 1815. The Court explored the history and purpose of the Taylor Grazing Act.[25] At no time have the grazing permits been recognized as a right but rather a privilege—an opportunity to rent the public range from the government. The Secretary always retained the right to decrease the number of "animal unit months" (AUMs) allocated to each permit— in reality decreasing and increasing the number of stock allowed to range the public land as its condition changed.[26] The rancher plaintiffs in *Public Lands Council* argued that they were harmed by the Secretary's ability to change their permits after they were issued because it would affect their ability to get mortgages and loans. However, the Court said the language of the Act makes it "clear that the ranchers' interest in permit stability cannot be absolute." *Id.* at 741, 120 S.Ct. 1815.[27] If hardship is produced, as well it may be, it is for the Congress, and not the Court, to amend the law.

■ As this trilogy of cases makes clear, the plaintiffs could not hold a valid property interest in the grazing permits.[28] Thus, their fee lands and water rights must be valued independently of any value added by any appurtenant grazing permits or grazing preferences. As this court stated in *Hage I*, "[a]lthough the permit may have value to plaintiffs ... value itself does not create a compensable property right, no matter how seemingly unjust the consequences to the plaintiffs. *See e.g., United States v. Cox*, 190 F.2d 293, 295 (10th Cir.1951), *cert. denied* 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652 (1951)." *Hage I* at 169. Indeed, this court recognized in *White Sands Ranchers of New Mexico v. United States*, 14 Cl.Ct. 559 (1988), that plaintiffs had no compensable right to the value that the permit lands contributed to their fee ranches, because the government should not be required to pay for value that it contributed to the ranches. *See White Sands Ranchers*, 14 Cl.Ct. at 566–67.[29]

25. The Court noted that the rules the Department of the Interior established for allocating grazing permits had a three tier ranking preference: 1) first preference went to owners who had base property to support their herds as well as had historically grazed the public range; 2) then the preference went to those who owned base property but had not grazed the range before; and 3) final preference went to those who had no base property. *See Public Lands Council*, 529 U.S. at 734–35, 120 S.Ct. 1815.

26. Indeed Congress gave the Secretary of the Interior discretion to "create grazing districts, to establish and modify the boundaries thereof, and from time to time to reclassify the lands therein for other purposes." *Red Canyon Sheep Co. v. Ickes*, 98 F.2d 308, 313 (D.C.Cir.1938).

27. The court also noted that the regulations establish that if a permit holder did not "make substantial use" of his permit for two years, the Secretary could revoke the portion of the permit for the unused part. The Secretary also had to approve such non-use on an annual basis, but could grant it for no more than three consecutive years. *See Public Lands Council*, 529 U.S. at 747, 120 S.Ct. 1815. The defendant asserts that the plaintiffs did not make full use of the permitted land which is why the grazing permits were revoked. However, all arguments about the "taking" of the grazing permits is moot since the plaintiffs could not hold a property interest in them under the Taylor Grazing Act and its implementing regulations.

28. However, if by revoking the grazing permits the Forest Service and Bureau of Land Management prevented the plaintiffs from accessing and using their vested water rights, then those agencies may have taken the plaintiffs' water rights. Those water rights were a property right and not a license like the grazing permits.

29. The United States District Court in Nevada recently reiterated that grazing rights are not appurtenant to vested water rights. *See Gardner v. Stager*, 892 F.Supp. 1301, 1303 (1995). The

At closing argument, defendant and *amici* also raised again a quasi-jurisdictional issue by asserting that the holdings of *United States v. Fuller,* 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973), and *Alves v. United States,* 133 F.3d 1454 (Fed.Cir.1998), preclude this court from awarding plaintiffs any damages for any taking of their alleged water rights. Thus, even if plaintiffs were able to prove ownership of the water rights they assert were taken, defendant argues *Fuller* and *Alves* would prevent this court from awarding any compensation. According to defendant, these cases classify the interests plaintiffs allege were taken as "non-compensable" property interests. Defendant, however, makes too much of *Fuller* and *Alves* for this stage of the proceeding. Defendant's arguments would be more appropriately raised in the takings stage.

While this court believes that plaintiffs present a strong equitable argument with regard to their grazing permits, the case law on this point is clear. Only Congress can create rights out of what now are licensees. Of course, there are rights to procedural due process in any permitting decision. *See Bischoff v. Glickman,* 54 F.Supp.2d 1226 (D.Wyo.1999), *aff'd,* 216 F.3d 1086 (2000). *See also Nat'l Wildlife Fed'n v. Cosgriffe,* 21 F.Supp.2d 1211 (D.Or.1998). Therefore, the plaintiffs have no compensable right in the land covered by their grazing permits or in the permits themselves.

## IV. SURFACE ESTATE

Plaintiffs, relying on a string of federal laws dating from the 18th century, claim a 752,000–acre surface estate for grazing; the acreage essentially encompasses the area of their grazing allotments. Defendant claims there is no such right. While at first glance this claim strikes the court as an attempt by the plaintiffs to revive their claim to a prop-

erty interest in the rangelands that this court disallowed in its summary judgment order, *see Hage I* at 170, it is somewhat different and requires analysis by the court. Therefore, this court will address each law in its chronological order.

### A. Ordinance of May 20, 1785

The first statute on which plaintiffs rely is the Ordinance for Ascertaining the Mode of Disposing of Lands in the Western Territory of May 20, 1785. The Ordinance directed surveys and divisions of Western lands into townships and established a system by which land within the townships would be sold to the public in the original thirteen states as well as granted to the members of the military in recognition of their service. Plaintiffs argue that the Ordinance stands for the policy of disposing "of the land so that the natural treasure that belonged to the United States could be put to productive use by its citizens .... The return benefit to the United States was productivity and economic contribution to the newly emerging communities in which these federal lands were situated." This policy, although clearly implicit in the Ordinance, applies only to township lands, not the range. Moreover, the Ordinance concerned "the territory ceded by individual [thirteen] states to the United States." The ordinance is inapplicable to Nevada because Nevada was governed by the law of Mexico at the time of the ordinance and would not become a state for 79 years. Thus, this ordinance does not provide support to plaintiffs' claim to a surface estate.

### B. Kearney's Code and the Treaty of Guadalupe–Hidalgo

Plaintiffs apparently recognize this jurisdictional problem and contend that the surface estate was properly under the legal re-

---

fact that plaintiffs "predecessors grazed stock on the land at issue in the 1870's does not mean that the Gardners today have a vested grazing right ... immune from federal regulations. On the contrary: use of public lands for stock grazing ... was and is a privilege with respect to the federal government, revocable at any time." *Gardner,* 892 F.Supp. at 1303–04. The Nevada Supreme Court recognized that the United States allows ranchers to graze on federal lands, but

can freely revoke that privilege at any time. *See Itcaina v. Marble,* 56 Nev. 420, 55 P.2d 625 (1935). The Nevada Supreme Court also recognized that portions of Nevada's water law were superceded by the Taylor Grazing Act, 43 U.S.C. § 315 *et seq.* (1934). *See Ansolabehere v. Laborde,* 73 Nev. 93, 310 P.2d 842 (1957) *cert. denied,* 355 U.S. 833, 78 S.Ct. 51, 2 L.Ed.2d 45 (1957) (1925 Stockwatering Act is superceded by Taylor Grazing Act where they overlap).

gime governing Nevada from the time of its occupation to the Treaty of Guadalupe–Hidalgo. Plaintiffs argue that the Treaty encompassed the law as recognized by the Kearney Code upon the accession of Nevada by the United States. The Kearney Code came into effect on September 27, 1845, by order of Brigadier General Stephen Watts Kearney.

The United States and Mexico concluded the Treaty of Guadalupe–Hidalgo on February 2, 1848. The Treaty ended the U.S.-Mexican War and enlarged the borders of the United States to include the present states of California, New Mexico, Nevada, Arizona, and Colorado in exchange for 15 million dollars. Upon ratification, the United States began to manage the newly acquired territory both as a sovereign and a proprietor under the Property Clause. *See* U.S. Const. Art. IV, § 3, cl. 2 ("Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States.").

A transfer of territory by cession, such as through a Treaty, "confers ... [only] a derivative title." CHARLES G. FENWICK, INTERNATIONAL LAW 219–220 (1924). Private holdings are not deemed expropriated with changes in sovereignty. Plaintiffs argue that as a matter of law, the United States was bound to recognize possessory rights as property because such rights were recognized under Mexican law. The principle of recognition of preexisting rights is supported by Article VIII of the Treaty, which stipulates respect and protection for Mexican private property coming under the jurisdiction of the United States. 9 Stat. 922, 929.

The California Supreme Court explained that under Mexican law occupation of land for stockraising could create a possessory property right. *See Sunol v. Hepburn,* 1 Cal. 254 (1850). However, the court stated that the mere roaming of cattle and other stock "was too slight a circumstance on which

to found a claim to wild, uncultivated and unfenced lands, unless it be also shown ... that such cattle and horses were restricted by keepers or otherwise within definite boundaries." *Sunol,* 1 Cal. at 262. Even then, occupation required the intent to occupy along with "actual detention" of the thing occupied. *Sunol,* 1 Cal. at 263. The plaintiffs presented no evidence at trial that demonstrated the plaintiffs' predecessors-in-interest had occupation of the land prior to Nevada being purchased by the United States.[30] Neither did they provide evidence which would link Mexican law to their claim for 752,000 acres of public land. Thus, this Treaty does not provide support to plaintiffs' claim to a surface estate.

## C. Act of 1866

The plaintiffs next turn their attention to the Act of 1866, which they argue created a system of split-estates. Because this court exhaustively examined it above, we need only restate here that the Act established water rights, but did not include more than a right-of-way to access those water rights. Thus, this act does not provide support to plaintiffs' claim to a surface estate.

## D. Desert Lands Act of 1877 [31]

The Desert Lands Act encouraged settlement of the West but limited any person's reclamation of the desert to no more than 640 acres. At the same time, the Act reserved water rights to prior appropriators and required all surplus water to be free for others to appropriate and use. However, as the plaintiffs note, they are not claiming fee simple lands under this Act nor do they rely on the Act to establish their grazing allotments. This Act merely shows that Congress limited settlers reclamation to 640 acres, not 752,000 acres.[32] Thus, this act undercuts plaintiffs' claim to a surface estate.

## E. A Trilogy: the Act of 1888,[33] Act of

---

**30.** In fact in their post-trial brief, the plaintiffs only allege that their predecessors-in-interest had possession of the range in question as far back as the 1860s.

**31.** Desert Lands Act, 19 Stat. 377 (1877).

**32.** Plaintiffs' Pine Creek Ranch encompasses approximately 7,000 acres.

**33.** Act of 1888, 25 Stat. 527 (1888).

1890,[34] and the Creative Act of 1891 [35]

This trilogy of laws was an extension of the Desert Lands Act and illustrates Congress' efforts to balance recognized prior usage of public lands by private citizens with protecting and taming the vast rangeland of the West. The Act of 1888 reserved desert lands that contained water or the possibility of ditches and waterways from entry and settlement. Congress quickly revoked the law in 1890, because it threatened to shut down all settlement in the desert areas—without water the land was useless. The Act of 1890 repealed the Act of 1888, reinstated settlers who had claims to the land prior to the Act of 1888, and allowed them to continue to occupy and settle the land. The Creative Act of 1891 clarified the 1890 Act by repealing the pre-emption laws. It also gave the President the authority to create National Forests from public lands.[36] While this series of laws eventually allowed the status quo to exist for settlers who had begun to reclaim the desert lands, nothing in the laws suggests that the settlers could accumulate a surface estate in public land through grazing permits as the plaintiffs claim. Instead, the laws affirm the rights of settlers to maintain their water rights and develop desert parcels of up to 640 acres. Thus, these acts also do not provide support to plaintiffs' claim to a surface estate.

## F. Forest Service Organic Administration Act [37]

■ The Forest Service Organic Administration Act set the parameters for reserving and establishing National Forests. The purpose of these National Forests was to "improve and protect the forests within their boundaries." 16 U.S.C. § 475. At the same time, the Act allowed settlers who lived within the boundaries of the Forest Reservations to enter and exit those lands freely. Neither did it prevent them from crossing the Forest Reservations to reach their homes. The Act also specifically outlined the purposes for which water could be used: domestic, mining, milling, and agriculture. The Act did not deprive settlers of any vested water rights once a forest was reserved and allowed them to locate new land for any unperfected claims in the new forest. However, this merely indicates that Congress understood the importance of water rights, not that Congress intended to create split estates in public land as plaintiffs claim.

## G. Livestock Reservoir Siting Act [38]

■ The Livestock Reservoir Siting Act allowed individuals and livestock companies to construct reservoirs on unoccupied public lands for the purpose of watering stock. It also allowed them to fence an area around the reservoir as long as it was available for others to use for watering stock. In addition, the Act gave the constructor of the reservoir control of the surrounding grazing—up to 160 acres—but subject to regulations the Secretary of the Interior would implement.

The defendant calls the right to water stock a bare license to use unoccupied lands, while the plaintiffs argue the settlers gained an easement around each reservoir. However, the Act's language never states that an easement was created. Instead, it states that a reservoir could be constructed of up to 160 acres. It is also clear from the Act's language that fences could not be constructed without permission of the Secretary of the Interior and he could direct them to be torn down immediately. This clearly indicates Congress had no intent for settlers to gain a permanent right to use or own the land around the reservoir.

34. Act of 1890, 26 Stat. 391 (1890) (also known as the Canal Act).

35. Creative Act of 1891, 26 Stat. 1103 (1891).

36. The Creative Act gave the President authority to create the Toiyabe National Forest in 1907.

37. Forest Service Organic Act of 1897, 30 Stat. 11 (1897).

38. Livestock Reservoir Siting Act, 43 U.S.C. § 952 (1897). The reservoir portion of this act was repealed by the FLPMA, 43 U.S.C. § 1769 (1976).

## H. The Stock Raising Homestead Act [39]

■ The Plaintiffs claim that Section 10 of the Stock Raising Homestead Act allowed current users of water to have a right of way across public land to that water of one to five miles across depending on the distance to the water source. The regulations interpreting section 10 state simply that applications for such a "driveway" to access water will be considered as received by the Secretary of the Interior.[40] The fact that Congress split the mineral and surface estate in this Act (and others) does not mean that either ceased to be within the control of the Secretary of the Interior. The land covered by this Act could be acquired in blocks of no more than 640 acres.

## I. Taylor Grazing Act [41]

■ Congress passed the Taylor Grazing Act in response to over-use of the open range. The Act gave the Secretary of the Interior broad discretion to manage the public land through rules and regulations and provided for future grazing to be allowed only via grazing permits. However, the system adopted gave a preference to those who had been grazing the land prior to passage of the Act. The Court of Appeals for the D.C. Circuit stated that one of the two purposes for the Taylor Grazing Act was to identify and protect the stock growers grazing rights. *Red Canyon Sheep Co. v. Ickes*, 98 F.2d 308, 314 (1938). However, the court affirmed that grazing rights were not property rights in the traditional sense of the word, but similar to licenses that could be issued and revoked by the Secretary of the Interior. *Id.* at 315.

## J. Nevada's Three Mile Grazing Rule

■ In the alternative to these federal statutes, plaintiffs allege that they have a surface estate based on Nevada's Three Mile Rule. NEV. REV. STAT. § 533.505(1) (2001). This law was passed in 1925, well after the Toiyabe National Forest was created in 1907, and stated that a rancher was guilty of a

misdemeanor if he allowed his stock to water at a site of another or within three miles of that site for two or more consecutive days. While the plaintiffs try to use this law to create a right, it is a well-established legal principle that "[t]he laws of the United States alone control the disposition of title to its lands. The States are powerless to place any limitation or restriction on that control." *United States v. Oregon*, 295 U.S. 1, 27–28, 55 S.Ct. 610, 79 L.Ed. 1267 (1935).

■ In fact, "the construction of grants by the United States is a federal not a state question and involves the consideration of state questions only insofar as it may be determined as a matter of federal law that the United States has impliedly adopted and assented to a state rule of construction as applicable to its conveyances." *See id.* (citations omitted). In addition, the Act of 1866 only allowed local custom and usage to be evaluated *where they did not conflict with federal law.*

The Taylor Grazing Act did the same: local custom was used as a guide as grazing permits were issued *to the extent they did not conflict with federal law.* Thus, Nevada's Three Mile Rule would only be applicable to the *extent it does not conflict with federal law.* However, none of the parties nor the court have found a federal statute which would establish a similar right to graze for three miles around a water source. Instead, every law and case the court could find reinforces the principle that grazing on federal public land is a privilege and never a right.

None of these statutes give the plaintiffs a surface estate. At most, they may have a right to go on to the land to access the water in which they have a vested right. The plaintiffs are correct that all of the statutes addressed in this section included savings clauses which stated that no laws could change vested rights. However, this court is not convinced that Congress ever intended to split the surface estate to the extent that

39. Stock Raising Homestead Act of 1916, 39 Stat. 862, 43 U.S.C. § 292 *et seq.*

40. Stock Raising Homesteads—Act of December 29, 1916, Circular No. 523 § 15.

41. Taylor Grazing Act, 43 U.S.C. §§ 315 et seq.

plaintiffs claim. There is no indication that Congress intended to give away vast acreages of the public land when the largest amount cited in any of these Acts was 640 Acres. Therefore, plaintiffs have no right to the 752,000 acre surface estate that they claim.

## CONCLUSION

The property involved here is not land at a specific time, but rather the usage of water which ebbs and flows throughout the years. The questions the court confronted were whether plaintiffs owned vested water rights and had a right to put to beneficial use the water that traveled the ditches. In addition to a two week trial with witnesses and evidence, the court at the request of the parties made a physical site inspection of many of those ditches.

For the reasons addressed above, the court finds that the plaintiffs have proven that they and their predecessors-in-interest own the rights to use the water listed in this FINAL OPINION: Findings of Fact. The plaintiffs have also proven that they own the ditch rights to ten of the sixteen ditches and pipelines that they claim. However, the plaintiffs do not have property rights in the surface estate or in the grazing permits. Thus, the court upholds in part and denies in part the plaintiffs' claims to three kinds of water: 1) vested water rights in the Southern Monitor Valley; 2) vested water rights in the Ralston and McKinney allotments; and 3) 1866 Act Ditch rights-of-way. The court also grants the defendant's Motion to Dismiss with respect to plaintiffs' Surface Estate and Grazing Permit claims.

## NEXT STEPS

This Final Finding of Fact simply addresses what property plaintiffs own. The next and final stage will address whether the plaintiffs' ditch rights-of-way (and other water rights) were taken by the government. The court will use a two step analysis to answer that question. The plaintiffs must present evidence to establish that: 1) plaintiffs had a beneficial use for the water prior to the government revoking their grazing permits and 2) that there was a taking of the plaintiffs' right to use their vested water right. Essentially, the plaintiffs must demonstrate they could have used the water if the government had not deprived them of access to prevent them from using the water. The plaintiffs have a right to the water so long as they can put it to beneficial use.

The parties are directed to the order that accompanies this opinion for the next steps in this case. Approximately sixty days from the date of this opinion the court will schedule a status conference with the parties to discuss the next immediate steps. Because of the length of this litigation it is hoped that one final proceeding, whether trial or oral argument, can be used to finally resolve this case. It is also hoped that the valuation issues can be included in this segment of the case.

It is so ORDERED.

# Appendix

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-01091 | E. WAYNE & JEAN N. HAGE | MEADOW CANYON CREEK AND TRIBUTARIES | NW¼NE¼ SEC. 21, T.10N., R.46E., M.D.B.&M., N.40°58'04"W. 19,837.63 FT. FROM THE NE¼ COR. SEC. 2, T.9N., R.46E. 14 O.B &M. | MAY 1 TO OCT. 31 PER DECREE 688 | IRRIGATION STOCKWATER DOMESTIC 1874 | 24 | 3 | 450 66 |

### 46 ACRE DESCRIPTIONS / PLACE OF USE

| SECTION | TOWN-SHIP | RANGE | NE NE | NE NW | NE SW | NE SE | NW NE | NW NW | NW SW | NW SE | SW NE | SW NW | SW SW | SW SE | SE NE | SE NW | SE SW | SE SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 9 N | 46 E | | | 0.28 | 10.02 | | 4.71 | 4.66 | 10.04 | | | 13.01 | 2.83 | 0.48 | 1.24 | | 7.83 | 8.03 | 60.34 | |
| 21 | 10 N | 46 E | | | | 0.06 | | | | | 0.97 | 0.40 | 9.01 | | 1.89 | 6.83 | 4.83 | 7.66 | 1.89 | 60.98 | |
| 27 | 10 N | 46 E | | | | | | | | | | | | | | | | | | 24.39 | |
| 28 | 10 N | 46 E | 12.34 | | 2.41 | | | | | | | | | | | | | | 3.44 | 4.13 | 15.32 | |
| 35 | 10 N | 46 E | 0.97 | | | | | | | | | | | | 4.31 | 2.68 | | 3.01 | | 10.60 | |
| 36 | 10 N | 46 E | | | | | | | | | | 2.78 | | | | | | | | 2.75 | |
| TOTAL ACRES: | | | | | | | | | | | | | | | | | | | 150.22 | |

REMARKS: REFER TO APPENDIX A FOR SPRING SOURCE DESCRIPTIONS FOR STOCKWATERING PROOF NOS. V-01061, V-01183, V-01184, V-01188, V-04485, V-04486 V-06738, AND V-06739 SHALL BE LIMITED TO 672 HEAD OF CATTLE, 4,722 SHEEP AND 9 HORSES DISTRIBUTED ON ALL SOURCES.

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-01183 | E. WAYNE & JEAN N. HAGE | SMITH CREEK (AKA WIDOW SMITH CREEK, AND SOUTH FORK WIDOW SMITH CREEK) | SW¼NW¼ SEC. 28, T.10N., R.46E., M.D.B.&M., N.83°38'W. 4,818.0 FT. FROM THE E¼ COR. SAID SEC. 28. | APR. 1 TO OCT. 30 | IRRIGATION STOCKWATER DOMESTIC 1874 | 4.5 | 3 | 228.11 |

### 46 ACRE DESCRIPTIONS / PLACE OF USE

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 27 | 10 N | 46 E | | | | | 2.41 | 13.54 | 12.98 | 24.10 | 20.06 | |
| 28 | 10 N | 46 E | | | | | 4.78 | | 17.33 | | 6.31 | |
| TOTAL ACRES: | | | | | | | | | | | 76 37 | |

REMARKS: REFER TO APPENDIX A FOR SPRING SOURCE DESCRIPTIONS FOR STOCKWATERING REFER TO REMARKS UNDER PROOF NO. V-01091 REGARDING STOCKWATERING

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC. FT. |
|---|---|---|---|---|---|---|---|---|
| V-01184 | E. WAYNE & JEAN N. HAGE | PINE CREEK - WHITE SAGE DITCH | SW¼NW¼ SEC. 18, T. 11N, R. 48E., M.D.B.&M., N 1°3'E. 388.72 FT. FROM THE E¼ COR. SAID SEC. 18 | APR. 1 TO OCT. 30 | IRRIGATION STOCKWATER 1878 | 6 | 3 | 240.90 |

### PLACE OF USE
### 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|

| 32 | T. 12 N. | R. 48 E. | | | | | | | | 66.30 | |
| 33 | T. 12 N. | R. 48 E. | | | | | | | | 14.00 | |
| | | | | | | | | | TOTAL ACRES: | 80.30 | |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC. FT. |
|---|---|---|---|---|---|---|---|---|
| V-01186 | E. WAYNE & JEAN N. HAGE | PINE CREEK & TRIBUTARIES | SW¼NW¼ SEC. 18, T. 11N, R. 48E., M.D.B.&M., N 1°3'E. 388.72 FT. FROM THE E¼ COR. SAID SEC. 18 | APR. 1 TO OCT. 30 | IRRIGATION STOCKWATER DOMESTIC 1874 | 72 | 3 | 3470.01 |

### PLACE OF USE
### 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | T. 11 N. | R. 48 E. | | | | | | | | 80.21 | |
| 11 | T. 11 N. | R. 48 E. | | | | | | | | 119.37 | REFER TO APPENDIX A FOR SPRING SOURCE DESCRIPTIONS FOR STOCKWATERING |
| 14 | T. 11 N. | R. 48 E. | | | | | | | | 86.88 | |
| 15 | T. 11 N. | R. 48 E. | | | | | | | | 232.28 | |
| 16 | T. 11 N. | R. 48 E. | | | | | | | | 184.04 | REFER TO REMARKS UNDER PROOF NO. V-01081 REGARDING STOCKWATERING |
| 17 | T. 11 N. | R. 48 E. | | | | | | | | 21.92 | |
| 20 | T. 11 N. | R. 48 E. | | | | | | | | 44.84 | SHADED ACREAGE IS SUPPLEMENTED BY PROOF NO. V-01186 AND PERMIT 3408, CERT. 742 |
| 21 | T. 11 N. | R. 48 E. | | | | | | | | 123.61 | |
| 22 | T. 11 N. | R. 48 E. | | | | | | | | 26.61 | |
| 28 | T. 11 N. | R. 48 E. | | | | | | | | 103.11 | |
| 34 | T. 12 N. | R. 48 E. | | | | | | | | 147.40 | |
| | | | | | | | | | TOTAL ACRES: | 1186.87 | |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-01188 | E WAYNE & JEAN N HAGE | ANDREW'S CREEK & TRIBUTARIES | SW¼NW¼ SEC. 30, T.11N, R.46E, M.D.B.&M., S 21°2'W 4,352.00 FT FROM THE E¼ COR SEC 19, T 11N, R.46E. M.D.B.&M. | APR. 1 TO OCT 30 | IRRIGATION STOCKWATER DOMESTIC 1874 | 24 | 3 | 3164.14 |

## PLACE OF USE
### 40 ACRE DESCRIPTIONS

| SECTION | TOWN SHIP | RANGE | NE NE | NE NW | NE SW | NE SE | NW NE | NW NW | NW SW | NW SE | SW NE | SW NW | SW SW | SW SE | SE NE | SE NW | SE SW | SE SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 11 N | 46 E | 2.78 | | | | | | | | | | | | | | | | 88.21 |
| 11 | 11 N | 46 E | | | 26.18 | | 2.29 | 34.70 | | | | | | 28.86 | | 2.01 | 37.44 | | 139.27 |
| 14 | 11 N | 46 E | 38.08 | | | 36.08 | 1.91 | | | | | | | | | | | | 40.67 |
| 15 | 11 N | 46 E | | 37.23 | 1.84 | | | 22.88 | | 18.07 | 37.44 | | | | 23.00 | | | | 232.28 |
| 16 | 11 N | 46 E | | | | | 8.28 | 38.33 | 39.27 | | 11.02 | 8.40 | 37.08 | | | | | | 141.60 |
| 17 | 11 N | 46 E | | | | | | | | | 39.27 | 18.44 | | | | | | | 21.62 |
| 20 | 11 N | 46 E | | | | | | | | | | | | | | | 39.94 | 21.82 | 0.00 |
| 21 | 11 N | 46 E | 31.44 | 8.18 | 13.90 | 15.23 | 17.91 | | | | | | | | | | | | 123.61 |
| 22 | 11 N | 46 E | 39.71 | | | | 24.91 | | | | | | | | | | | | 26.61 |
| 28 | 12 N | 46 E | | | | | | | | | | | | | | | | | 103.11 |
| 35 | 12 N | 46 E | 39.9 | 38.68 | | | | | | | | | | 33.34 | 38.23 | 34.31 | 8.03 | | 147.40 |

| | TOTAL ACRES | | 36.41 | 34.31 | 31.21 | | | | | | | | | | | | | | 1081.38 |

## REMARKS

REFER TO REMARKS UNDER PROOF NO V-01091 REGARDING STOCKWATERING

SHADED ACREAGE IS SUPPLEMENTED BY PROOF NO V-01185 AND PERMIT 3404, CERT 742

REFER TO APPENDIX A FOR SPRING SOURCE DESCRIPTIONS FOR STOCKWATERING

| PROOF NO | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|
| V 02355 | JAMES R BOYCE & CHRISTINE D BOYCE | LOWER WADSWORTH CREEK AND TRIBUTARIES | NW¼NE¼ SEC 27, T 13N, R 47E, M.D.B.&M. S 48°28'E 17,820 FT FROM THE NW COR OF SEC 12, T 13N, R 47E, M.D.B.&M | OCT 1 TO MAY 31 | STOCKWATER 1871 | | |

**REMARKS:** STOCKWATERING UNDER PROOF NOS V 02356, V 02357 V 02359, V 05594-98, V 05736, V 05742 AND V 06744 SHALL BE LIMITED TO 1,590 HEAD OF CATTLE, 16,800 SHEEP AND 419 HORSES DISTRIBUTED ON ALL SOURCES

### PLACE OF USE — 40 ACRE DESCRIPTIONS

| SECTION | TOWNSHIP | RANGE | NE | NW | SW | SE |
|---|---|---|---|---|---|---|
| 14 | T 13 N | R 47 E | x | x | x | x |
| 21 | T 13 N | R 47 E | x | x | x | x |
| 22 | T 13 N | R 47 E | x | x | x | x |
| 23 | T 13 N | R 47 E | x | x | x | |
| 26 | T 13 N | R 47 E | x | x | x | x |
| 28 | T 13 N | R 47 E | | x | x | x |
| 27 | T 13 N | R 47 E | x | x | x | x |
| 34 | T 13 N | R 47 E | x | x | x | x |
| 30 | T 13 N | R 48 E | x | x | | |

| PROOF NO | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V 02357 | JAMES R BOYCE & CHRISTINE D BOYCE | MILL CANYON CREEK | A POINT ON THE WEST LINE OF SEC. 1, T 13N, R 46E, M.D.B.&M., N 1°30'E 2,937.5 FT FROM THE SW COR. OF SAID SEC. 1 | MAY 1 TO NOV 30 | STOCKWATER 1868 | | | |

### PLACE OF USE — 40 ACRE DESCRIPTIONS

| SECTION | TOWNSHIP | RANGE | NE | NW | SW | SE |
|---|---|---|---|---|---|---|
| 1 | T 13 N | R 48 E | | | | |

**REMARKS:** REFER TO REMARKS UNDER PROOF NO V 02356 REGARDING STOCKWATERING

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-02309 | JAMES R. BOYCE & CHRISTINE D. BOYCE | (LOWER) MORGAN CREEK & TRIBUTARIES | NE¼NW¼ SEC. 21, T.12N., R.47E., M.D.B.&M. S.84°23'W. 8,013 FT. FROM THE NE COR. OF SEC. 22, T.12N., R.47E., M.D.B.&M. | OCT. 1 TO MAY 31 | STOCKWATER 1877 | | | |

| SECTION | TOWN-SHIP | RANGE | | | | PLACE OF USE / ACRE DESCRIPTIONS | | | | | | | | | | | | | | | | | | | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 | 12 N | 47 E | NE | | X | | | | | | | | | | | | | | | | | | | | | | | | REFER TO REMARKS UNDER PROOF NO. V-02366 REGARDING STOCKWATERING |
| 21 | 12 N | 47 E | | | X | | | | | | | | | | X | | | | | | | | | | | | | | |
| 22 | 12 N | 47 E | | | X | | | | | | | | | | X | | | | | | | | | X | NE | | | | |
| 23 | 12 N | 47 E | | | X | | | | | | | | | | X | | | | | | | | | | | | | | |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-04174 | STEPHEN C. WILMANS, III | UNNAMED SPRINGS | NE¼SE¼ SEC. 27, T.13N., R.46E., M.D.B.&M. N.14°51'W 2,202 FT. FROM THE SE COR. OF SAID SEC. 27 | APR. 1 TO SEPT. 30 | STOCKWATER 1877 | | | |

| SECTION | TOWN-SHIP | RANGE | | | | PLACE OF USE / ACRE DESCRIPTIONS | | | | | | | | | | | | | | | | | | | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 27 | 13 N | 46 E | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | | | | | | | | 40 | THIS PROOF REPRESENTS THE SAME SPRINGS AS PROOF NO. V-04748 |

PROOF NOS. V-04174, V-04892,
V-05740, V-06741, V-06743, V-06748, AND V-06744
SHALL BE LIMITED TO 2,086 HEAD OF CATTLE, 18,600
SHEEP AND 410 HORSES DISTRIBUTED
ON ALL SOURCES

598

| PROOF NO. | CLAIMANT | SOURCE | POINTS OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| R-04175 | UNITED STATES OF AMERICA FOREST SERVICE | BARLEY CREEK | SE¼SW¼ SEC. 10, T.09N., R.47E., M.D.B.&M., N.73°00'W 12,700 FT FROM THE BARLEY HORIZONTAL CONTROL STATION. | MAY 1 TO OCT. 31 | WATERSHED PROTECTION APRIL 15, 1907 DOMESTIC STOCKWATERING | 0.002 | | 0.026 |

| SECTION | TOWN- SHIP | RANGE | N | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 9 N. | 47 E | | | | | | | | | X | | | | | | | | | | | FEDERAL RESERVED WATER RIGHT UNDER THE ORGANIC ADMINISTRATION ACT OF 1897. WATER IS USED WITHIN BARLEY CREEK ADMINISTRATIVE SITE FOR WATERSHED PROTECTION |

PLACE OF USE — ACRE DESCRIPTIONS: 40

| PROOF NO. | CLAIMANT | SOURCE | POINTS OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| R-04176 | UNITED STATES OF AMERICA FOREST SERVICE | MEADOW SPRING (AKA HOUSE SPRING OR UNNAMED SPRINGS) | NE¼SW¼ SEC. 21, T.10N., R.48E., M.D.B.&M., N.27°30'E. 15,100 FT FROM THE SE COR. OF SAID SEC 31 | MAY 1 TO OCT. 31 / MAY 1 TO MAY 31 / MAY 1 TO OCT 31 | WATERSHED PROTECTION APRIL 18, 1907 / DOMESTIC STOCKWATERING | 0.002 | | 0.021 |

| SECTION | TOWN- SHIP | RANGE | N | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | 10 N. | 48 E | | | | | | | | | | | | | | | | | | | | FEDERAL RESERVED WATER RIGHT UNDER THE ORGANIC ADMINISTRATION ACT OF 1897. THE ORGANIC ADMINISTRATION ACT OF 1897. WATER IS USED WITHIN MEADOW CANYON ADMINISTRATIVE SITE FOR WATERSHED PROTECTION SAME AS PERMIT 10606, CERTIFICATE 2914 |

PLACE OF USE — ACRE DESCRIPTIONS: 40

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| R-04177 | UNITED STATES OF AMERICA - FOREST SERVICE | TRIPLE SPRINGS (AKA PETERSON SPRING) | SE/NE/NE SEC. 20, T 10N, R 45E, M.D.B.&M., N 20°00'E 16,080 FT FROM THE SE COR. OF SAID SEC 31 | MAY 1 TO OCT. 31 | WATERSHED PROTECTION APRIL 16, 1907 STOCKWATERING | 0.001 | | 0.185 |

**SECTION** 20 **TOWNSHIP** T 10 N **RANGE** R 45 E

| | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | X | | | | | | | | | | | | | | | |

**PLACE OF USE / ACRE DESCRIPTIONS:** 40 ACRE DESCRIPTIONS

**REMARKS:** FEDERAL RESERVED WATER RIGHT UNDER THE ORGANIC ADMINISTRATION ACT OF 1897. WATER IS USED WITHIN MEADOW CANYON ADMINISTRATIVE SITE FOR WATERSHED PROTECTION

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| R-04178 | UNITED STATES OF AMERICA - FOREST SERVICE | O SPRING (AKA MACAFEE SPRING) | NE/NE/NE SEC. 20, T.10N., R.45E., M.D.B.&M., N 19°30'E 16,350 FT. FROM THE SE COR. OF SAID SEC. 31. | APR. 1 TO NOV. 30 / APR. 1 TO NOV. 30 / MAY 1 TO OCT. 31 | WATERSHED PROTECTION APRIL 16, 1907 / DOMESTIC / STOCKWATERING | 0.002 | | 0.269 |

**SECTION** 20 **TOWNSHIP** T 10 N **RANGE** R 45 E

| | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | X | | | | | | | | | | | | | | | |

**PLACE OF USE / ACRE DESCRIPTIONS:** 40 ACRE DESCRIPTIONS

**REMARKS:** FEDERAL RESERVED WATER RIGHT UNDER THE ORGANIC ADMINISTRATION ACT OF 1897. WATER IS USED WITHIN MEADOW CANYON ADMINISTRATIVE SITE FOR WATERSHED PROTECTION

## Proof R-04179

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY: PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| R-04179 | UNITED STATES OF AMERICA, FOREST SERVICE | BOX SPRING | NW¼SW¼ SEC. 31, T 10N, R 45E, M.D.B.&M., N 27°00'E 14,000 FT FROM THE SE COR. OF SAID SEC 31. | MAY 1 TO SEPT 30 | WATERSHED PROTECTION APRIL 15, 1907 | 0.001 | | 0.126 |
| | | | | | STOCKWATERING | | | |

REMARKS: FEDERAL RESERVED WATER RIGHT UNDER THE ORGANIC ADMINISTRATION ACT OF 1897 WATER IS USED WITHIN MEADOW CANYON ADMINISTRATIVE SITE FOR WATERSHED PROTECTION

### PLACE OF USE

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | X | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | T 10 N | R 45 E | | | | | | | | | X | | | | | | | | | |

ACRE DESCRIPTIONS 40

## Proof R-04180

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY: PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| R-04180 | UNITED STATES OF AMERICA, FOREST SERVICE | SCUFFE'S SPRING | NE¼SW¼ SEC. 07, T 10N, R 48E, M.D.B.&M., S 87°00'E 4,500 FT FROM THE SW COR. OF SEC 31. T11N, R.48E, M D B &M | MAY 1 TO OCT 31 | WATERSHED PROTECTION APRIL 18, 1907 | 0.002 | | 0.33 |
| | | | | | STOCKWATERING | | | |

REMARKS: FEDERAL RESERVED WATER RIGHT UNDER THE ORGANIC ADMINISTRATION ACT OF 1897 WATER IS USED WITHIN SCUFFE'S ADMINISTRATIVE SITE FOR WATERSHED PROTECTION

### PLACE OF USE

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | X | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | T 10 N | R 48 E | | | | | | | | | X | | | | | | | | | |

ACRE DESCRIPTIONS 40

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-04181 | UNITED STATES OF AMERICA - FOREST SERVICE | UPPER SCUFFE'S SPRING | SE.SE.SE. SEC. 31, T.11N., R.48E., M.D.B.&M., N 79°00'E 4,600 FT FROM THE SW COR. OF SAID SEC 31. | MAY 1 TO OCT 31 | WATERSHED PROTECTION APRIL 15, 1907 DOMESTIC STOCKWATERING | 0.002 | | 0.033 |

| SECTION | TOWN. SHP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | 11 N | 48 E | | | | X | | | | | | | | | | | | | | | |

**PLACE OF USE**

40 ACRE DESCRIPTIONS

FEDERAL RESERVED WATER RIGHT UNDER THE ORGANIC ADMINISTRATION ACT OF 1897. WATER IS USED WITHIN SCUFFE'S ADMINISTRATIVE SITE FOR WATERSHED PROTECTION

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-04483 | HMH NEVADA RESOURCES, LTD | WARM SPRINGS | SE.NE¼ SEC. 00, T.11N., R.47E., M.D.B.&M.; S 02°00'W 2,060 FT FROM THE NE COR. OF SAID SEC 00 | JAN 1 TO DEC 31 | STOCKWATER DOMESTIC 1866 | | | |

**PLACE OF USE**

40 ACRE DESCRIPTIONS

| SECTION | TOWN. SHP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 11 N | 47 E | | | | X | | | | | | | | | | | | | | | |

PROOF NOS. V-04483 AND V-05738 SHALL BE LIMITED TO 1,000 HEAD OF CATTLE, 12,000 SHEEP AND 34 HORSES

| PROOF NO | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT / ACRE | TOTAL AC-FT |
|---|---|---|---|---|---|---|---|---|
| V-04405 | E WAYNE & JEAN N HAGE | MOSQUITO CREEK & TRIBUTARIES | NW¼NE¼ SEC. 31, T.12N., R.47E., M.D.B.&M., N.64°10'E. 1856 FT. FROM THE NE COR. SAID SEC. 31. | JAN. 1 TO DEC. 31 | IRRIGATION STOCKWATER DOMESTIC 1874 | 22 | 3 | 7131.48 |

**PLACE OF USE / ACRE DESCRIPTIONS**

| SECTION | TOWN SHIP | RANGE | NE NE | NE NW | NE SW | NE SE | NW NE | NW NW | NW SW | NW SE | SW NE | SW NW | SW SW | SW SE | SE NE | SE NW | SE SW | SE SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | 12 N | 48 E | NE 0.65 | NW 0.30 | SW 7.12 | SE | NE | LOT 1 | LOT 2 | SE | NE | LOT 3 LOT 4 | SW | SE | NE | NW | SW | SE | 8.07 | |
| 24 | 12 N | 48 E | 19.21 | 1.04 | | | | | | | | | | | | 14.34 | | | 34.59 | |
| 25 | 12 N | 48 E | 22.73 | 37.91 | 27.34 | | | | | | | | | | | | | | 87.98 | |
| 26 | 12 N | 48 E | 28.28 | | 28.06 | 11.17 | | | | | 0.48 | | 2.76 | | | | | | 98.75 | |
| 36 | 12 N | 48 E | | | | | | | | | | | | | | | | | | |
| 35 | 12 N | 47 E | | | 39.84 | 28.46 | 12.63 | 8.27 | | 16.24 | 38.08 | | | 20.33 | | | | | 176.58 | |
| 6 | 12 N | 47 E | 40.00 | 40.10 | | 13.16 | | | | | | | | 1.26 | | | | | | |
| 7 | 12 N | 47 E | | | | | | | | | | | 2.69 | | | | | 3W | | |
| 8 | 12 N | 47 E | | | | | | | | | | | | | | | | | | |
| 18 | 12 N | 47 E | 32.65 | 19.88 | | | 31.81 | 37.99 | | 34.03 | 38.10 | | | 12.31 | 13.14 | | | | | |
| 19 | 12 N | 47 E | 17.26 | 18.41 | | | 37.99 | 37.99 | | 38.30 | 34.30 | | | 18.68 | 20.04 | | | | | |
| 30 | 12 N | 47 E | | 22.49 | 8.24 | | LOT 1 | LOT 2 | | | 20.54 | | | | | | | | | |
| 31 | 12 N | 47 E | 39.02 | 37.95 | 27.34 | | 38.32 | 38.76 | | | 39.46 | | 13.77 | 33.76 | | | | | 182.92 | |
| 32 | 12 N | 47 E | 0.30 | | | | | | | 4.19 | | | | | | | | | 160.06 | |

| TOTAL ACRES | 2377.16 |

SEC.&SEC. SEC. 32, T.12N., R.47E.,
M.D.B.&M., N.79°01'E. 4690 FT.
FROM THE SW COR. SAID SEC. 32.

SW¼NE¼ SEC. 32, T.12N., R.47E.,
M.D.B.&M., S.84°05'E. 3690 FT
FROM THE NW COR. SAID SEC. 32.

**REMARKS:**

SOURCE DESCRIPTIONS FOR STOCKWATERING
REFER TO APPENDIX A FOR SPRING
STOCKWATERING

REFER TO REMARKS UNDER
PROOF NO V-01091 REGARDING
STOCKWATERING

SHADED ACREAGE IS SUPPLEMENTED
BY PERMIT 4784, CERT 1212 AND PERMIT 4785,
CERT 1213

PERMITS 4784 AND 4785 ARE NOT
SUPPLEMENTAL TO EACH OTHER

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC. FT. | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| V-04466 | E WAYNE & JEAN N HAGE | BARLEY CREEK & TRIBUTARIES, (MEADOW CANYON CREEK &), (WIDOW SMITH CREEK) | NW¼NW¼ SEC. 06, T 10N , R 47E , M.D.B.&M., S.28°41'E., 1183 FT., FROM THE NW COR SAID SEC 6 / SW¼SE¼ SEC 01, T 10N, R 48E, M.D.B.&M., N.89°40'E. 810 FT., FROM THE S¼ COR. SAID SEC 1. / NW¼SE¼ SEC. 13, T 10N, R 48E, M.D.B.&M., S.14°11'39E. 3028 63 FT., FROM THE N¼ COR. SAID SEC. 13 / SE¼SW¼ SEC. 36, T.10N., R.48E, M.D.B.&M., N.82°43'E 1 814.00 FT FROM THE SW COR SAID SEC. 36. | JAN. 1 TO DEC 31 | IRRIGATION STOCKWATER DOMESTIC 1874 | 24 | 3 | 2864.83 |

**PLACE OF USE / ACRE DESCRIPTIONS**

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 1 | T. 10 N. | R. 48 E. | | 7.40 | | 39.80 | | | | | | | | | | 38.20 | 0 70 | 38.30 | 142.80 | |
| 12 | T. 10 N. | R. 48 E. | 39.90 | 18.31 | 38.10 | 39.90 | | | LOT 4 16.00 | LOT 8 13.90 | LOT 6 18.60 | LOT 7 17.90 | | | | 38.30 | 38.20 | 39.30 | 38.35 | 285.48 | |
| 8 | T. 10 N. | R. 47 E. | | | | | LOT 1 13.90 | LOT 2 33.80 | LOT 3 33.90 | LOT 4 34.10 | | | | | | | | | 64.70 | |
| 7 | T. 10 N. | R. 47 E. | | | | | LOT 1 13.80 | LOT 2 33.90 | | | | | | | | | | | | 116.10 | |
| 18 | T. 10 N. | R. 47 E. | | | | | LOT 1 32.88 | | | | | | | 1.00 | | | | | | 33.88 | |
| 35 | T. 11 N. | R. 48 E. | NE | NW | SW | SE | | | | | | | 6.90 | 0.20 | | | | | LOT 6 | 284.64 | |
| 31 | T. 11 N. | R. 47 E. | NE | | 14.00 | | | | | | | | | | | | | | LOT 6 | 6.30 | |
| | | | | | | | | | | | | | | | **TOTAL ACRES** | | | | 881.61 | |

40 ACRE DESCRIPTIONS

REFER TO APPENDIX A FOR SPRING SOURCE DESCRIPTIONS FOR STOCKWATERING

REFER TO REMARKS UNDER PROOF NO V-01091 REGARDING STOCKWATERING

SHADED ACREAGE IS SUPPLEMENTED BY PERMIT 3361, CERT. 2606; AND PERMIT 3362 CERT. 2616; PERMITS 3381 AND 3382 ARE NOT SUPPLEMENTAL TO EACH OTHER

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEAR(S); PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-04532 | STEPHEN C WILMARTH, W | MORGAN CREEK & TRIBUTARIES | NW¼NW¼ SEC. 23, T 12N, R 47E, M.D.B.&M., S 88°06'E, 1,408 FT. FROM THE NW COR. OF SAID SEC 23<br><br>NE¼NW¼ SEC. 23, T 12N, R 47E, M.D.B.&M., S 87°01'E 2,070 FT FROM THE NW COR. OF SAID SEC 23 | APR. 1 TO OCT. 31 | IRRIGATION STOCKWATER DOMESTIC 1871 | 6.0 | 3 | 54.30 |

**PLACE OF USE**

**40 ACRE DESCRIPTIONS**

| SECTION | TOWN- SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | 12 N | 47 E | | 6.70 | | | | | | | | | | | | | | |
| 23 | 12 N | 47 E | | | | | 0.20 | 11.20 | | | | | | | | | | | |

| | ACRES PER SECTION | REMARKS |
|---|---|---|
| TOTAL ACRES | | |
| | 6.70 | REFER TO REMARKS UNDER PROOF NO. V-04174 REGARDING STOCKWATERING |
| | 11.40 | |
| | 18.10 | |

| PROOF NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-05584 | JAMES R. BOYCE & CHRISTINE D. BOYCE | BRANDY'S SPRING | SE¼SW¼ SEC. 34, T.13N., R.46E., M.D.B.&M., N 88°61'W, 12,180 FT. FROM THE W¼ COR. SEC. 9, T.13N., R.46E., M.D.B.&M. | MAY 1 TO NOV. 30 | STOCKWATER 1865 | | | |

| | PLACE OF USE | | | | | | REMARKS | |
|---|---|---|---|---|---|---|---|---|
| SECTION | TOWN. SHIP | RANGE | NE NW SW SE | NE NW SW SE | NE NW SW SE | NE NW SW SE | ACRES PER SECTION | |
| 34 | T 13 N | R 46 E | | | | | | REFER TO REMARKS UNDER PROOF NO V-02316 REGARDING STOCKWATERING |

40 ACRE DESCRIPTIONS

| PROOF NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-05585 | JAMES R. BOYCE & CHRISTINE D. BOYCE | KIP'S SPRING | SW¼NE¼ SEC. 16, T.13N., R.46E., M.D.B.&M., S 70°19'W, 7,540 FT. FROM THE NE COR. OF SEC 16, T.13N., R.46E, M.D.B.&M. | MAY 1 TO NOV. 30 | STOCKWATER 1865 | | | |

| | PLACE OF USE | | | | | | REMARKS | |
|---|---|---|---|---|---|---|---|---|
| SECTION | TOWN. SHIP | RANGE | NE NW SW SE | NE NW SW SE | NE NW SW SE | NE NW SW SE | ACRES PER SECTION | |
| 16 | T 13 N | R 46 E. | | | | | | REFER TO REMARKS UNDER PROOF NO V-02316 REGARDING STOCKWATERING |

40 ACRE DESCRIPTIONS

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | DUTY AC.-FT./ ACRE | FLOW CFS | DUTY AC.-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|---|
| V-06594 | JAMES R. BOYCE & CHRISTINE D BOYCE | JT'S SPRING | NW¼SW¼ SEC. 5, T.13N, R.46E., M.D.B.&M., N.33°25'W 28,100 FT FROM THE SE COR OF SEC. 27, T.13N., R.46E., M.D.B.&M | MAY 1 TO NOV. 30 | STOCKWATER 1885 | | | | |

| SECTION | TOWN- SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | T. 13 N | R. 46 E | | | | | | | | | | | | | X | | | |

| | PLACE OF USE | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|
| 40 | ACRE DESCRIPTIONS | | | PROOF NO V-422355 REGARDING STOCKWATERING REFER TO REMARKS UNDER |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-06597 | JAMES R. BOYCE & CHRISTINE D. BOYCE | BARBARA'S SPRING | NE¼SE¼ SEC. 8, T 13N, R.46E., M.D.B.&M., N.32°46'W 28,600 FT FROM SE COR. OF SEC. 27, T.13N., R.46E., M.D.B.&M., | MAY 1 TO NOV. 30 | STOCKWATER 1885 | | | |

| SECTION | TOWN- SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 | T. 13 N | R. 46 E | | | | | | | | | X | | | | | | | |

| | PLACE OF USE | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|
| 40 | ACRE DESCRIPTIONS | | | REFER TO REMARKS UNDER PROOF NO. V-422356 REGARDING STOCKWATERING |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | DUTY | | | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | FLOW CFS | AC-FT/ ACRE | TOTAL AC-FT. | |
| V-04698 | JAMES R. BOYCE & CHRISTINE D. BOYCE | DAVID'S SPRING | NW¼SE¼ SEC 8, T 13N, R 48E, M.D.B&M, N.36°12'W, 28,860 FT. FROM THE SE COR. OF SEC 27, T.13N, R.48E, M.D.B&M | MAY 1 TO NOV. 30 | STOCKWATER 1886 | | | | REFER TO REMARKS UNDER PROOF NO. V-02365 REGARDING STOCKWATERING |

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 8 | T 13 N | R 48 E | | | | | | | | | | | X | | | | | | | |

PLACE OF USE — 40 ACRE DESCRIPTIONS

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | DUTY | | | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | FLOW CFS | AC-FT/ ACRE | TOTAL AC-FT. | |
| V-05738 | JAMES R. BOYCE & CHRISTINE D. BOYCE | DRY LAKE WELL | NW¼SW¼ SEC 28, T 13N, R 47E, M.D.B&M | JAN 1 TO DEC. 31 | STOCKWATER PRIOR TO 1939 | | | | REFER TO REMARKS UNDER PROOF NO. V-03288 REGARDING STOCKWATERING |

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 28 | T 13 N | R 47 E | | | | | | | | | | | | | | | | | | | |

PLACE OF USE — 40 ACRE DESCRIPTIONS

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-08738 | E. WAYNE HAGE AND JEAN N. HAGE & HRH NEVADA RESOURCES, INC. | COMBINATION SPRINGS | SE¼NE¼ SEC 25, T10N., R 48E., M.D.B.&M., N 18°28'W 3,270 FT. FROM THE SE COR. OF SAID SEC 25 | JAN 1 TO DEC 31 | STOCKWATER 1865 | | | |

**PLACE OF USE** — 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 26 | 8 N. | 48 E | | | | | | | | | | | | | x | | | | | | |

REFER TO REMARKS UNDER PROOF NO. V-01081 REGARDING STOCKWATERING FOR THE HAGE PORTION AND PROOF NO. V-04483 FOR THE HRH NV. RES. PORTION

---

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-08739 | E. WAYNE HAGE AND JEAN N. HAGE | PASCO CREEK, PASCO SPRING & TRIBUTARIES | SE¼NW¼ SEC. 08, T 11N., R 48E., M.D.B.&M., N 07°53'26"W, 3,726 FT FROM THE S¼ COR. OF SAID SEC. 08. | MAY 1 TO SEPT 30 | IRRIGATION STOCKWATER DOMESTIC 1869 | 1.6 | 3 | 240.80 |

**PLACE OF USE** — 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 32 | 12 N. | 48 E | | | | | | | | | | | | | | | | | | | SHADED ACREAGE IS SUPPLEMENTED BY PERMIT 2213, CERTIFICATE 410 AND PROOF NO V-01184 |
| 33 | T 12 N. | 48 E | | | | | | | 17.10 | 12.83 | | | | | | 14.97 | 5.12 | 21.61 | | 66.30 | REFER TO REMARKS UNDER PROOF NO. V-01081 REGARDING STOCKWATERING |

| | SECTION | |
|---|---|---|
| | 80.30 | |
| | 14.00 | |
| | 66.30 | |

TOTAL ACRES: 80.30

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-04740 | STEPHEN C. WILLIAMS, III | DRY LAKE SPRINGS (SW) | SW¼SE¼ SEC. 17, T.13N., R.47E., M.D.B.&M., S 40°02'E 8,276 FT. FROM THE NW COR. OF SAID SEC 17 | JAN 1 TO DEC 31 | STOCKWATER 1874 | | | |

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 17 | T 13 N | R 47 E | | | | | | | | | | | | | | | X | X | | REFER TO REMARKS UNDER PROOF NO. V-04174 REGARDING STOCKWATERING |

**PLACE OF USE** — 40 ACRE DESCRIPTIONS

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-04741 | STEPHEN C. WILLIAMS, III | DRY LAKE SPRINGS (NE) | SW¼SE¼ SEC. 8, T.13N., R.47E., M.D.B.&M., N 81°48'E 8,822 FT FROM THE SW COR OF SEC 8, T 13N, R.47E, M.D.B.&M. | JAN 1 TO DEC 31 | STOCKWATER 1874 | | | |

| SECTION | TOWN SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 8 | T 13 N | R 47 E | | | | | | | | | | | | | | | X | X | | REFER TO REMARKS UNDER PROOF NO. V-04174 REGARDING STOCKWATERING |

**PLACE OF USE** — 40 ACRE DESCRIPTIONS

| PROOF NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-08742 | JAMES R BOYCE & CHRISTINE D BOYCE | UPPER MORGAN CREEK & TRIBUTARIES | A POINT ON THE NORTH-SOUTH CENTER SECTION LINE, SEC. 23, T 12N, R 47E, M D B & M, S 01°00'E 1,138 FEET FROM THE N¼ COR OF SAID SEC 23 | MAY 1 TO NOV 30 | STOCKWATER 1871 | | | |

**PLACE OF USE**
40 ACRE DESCRIPTIONS

| SECTION | TOWN SHIP | RANGE | NE NE | NW NE | SW NE | SE NE | NE NW | NW NW | SW NW | SE NW | NE SW | NW SW | SW SW | SE SW | NE SE | NW SE | SW SE | SE SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | T 12 N | R 47 E | X | X | X | X | X | X | X | X | | | | | | | | | |
| 24 | T 12 N | R 47 E | X | X | X | X | X | X | X | X | | | | | | | | | |
| 19 | T 12 N | R 48 E | X | X | X | X | X | X | X | X | X | X | X | X | | | | | |
| 20 | T 12 N | R 48 E | | | | | X | X | X | X | X | X | X | X | | | | | |
| 28 | T 12 N | R 48 E | | | | | X | X | X | X | X | X | X | X | | | | | |
| 28 | T 12 N | R 48 E | | | | | X | X | X | X | X | X | X | X | | | | | |
| 30 | T 12 N | R 48 E | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | |
| 31 | T 12 N | R 48 E | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | |
| 32 | T 12 N | R 48 E | X | X | X | X | X | X | X | X | | | | | | | | | |
| 33 | T 12 N | R 48 E | X | X | X | X | X | X | X | X | | | | | | | | | |

**REMARKS**

REFER TO REMARKS UNDER PROOF NO. V-02386 REGARDING STOCKWATERING

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| V-08743 | STEPHEN C. WILLIAMS, III | WADSWORTH CREEK & TRIBUTARIES (UPPER) | A POINT ON THE WEST LINE SEC. 31, T 13N, R 48E, M D B & M. S 17°14'40"W, 18,204.2 FEET FROM THE E¼ COR SEC. 7, T 13N, R 48E, M.D.B.&M. | MAY 1 TO NOV 30 | STOCKWATER 1871 | | | |

**PLACE OF USE**
**ACRE DESCRIPTIONS**

| | ACRES PER SECTION | REMARKS |
|---|---|---|
| 40 | | REFER TO REMARKS UNDER PROOF NO. V-04174 REGARDING STOCKWATERING |

| SECTION | TOWN. TWP | RANGE | NE NE | NE NW | NE SW | NE SE | NW NE | NW NW | NW SW | NW SE | SW NE | SW NW | SW SW | SW SE | SE NE | SE NW | SE SW | SE SE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 6 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 7 | T. 12 N. | R. 48 E | x | x | x | x | | | | x | | | x | x | | | x | x |
| 8 | T. 12 N. | R. 48 E | x | x | x | | x | x | x | x | x | x | x | x | x | x | x | x |
| 9 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 16 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 17 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 20 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 21 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 22 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | | | x | x | x | x | x | |
| 28 | T. 12 N. | R. 48 E | x | x | x | x | | | | x | | | x | x | x | x | x | x |
| 29 | T. 12 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 30 | T. 13 N. | R. 48 E | | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 31 | T. 13 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| 32 | T. 13 N. | R. 48 E | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-03744 | JAMES R. BOYCE & CHRISTINE D. BOYCE | NORTHUMBERLAND SPRING | NE¼SE¼ SEC. 8, T.13N., R.48E., M.D.B.&M., S 35°37'W. 438 FT FROM THE E¼ COR. OF SAID SEC 8 | JAN 1 TO DEC 31 | STOCKWATER 1874 | | | |

| SECTION | TOWN-SHIP | RANGE | NE | | | | | NW | | | | | SW | | | | | SE | | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | | NE | NW | SW | SE | | NE | NW | SW | SE | | NE | NW | SW | SE | | | |
| 8 | 13 N | R. 48 E | | | | | | | | | | | | | | | | | X | | | | 40 | REFER TO REMARKS UNDER PROOF NO V-02316 REGARDING STOCKWATERING |

PLACE OF USE
40 ACRE DESCRIPTIONS

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| V-03748 | STEPHEN C. WILMANS, III | WATER CANYON SPRINGS | NE¼SE¼ SEC. 27, T.13N., R.48E., M.D.B.&M., S 70°44'W 738 FT. FROM THE E¼ COR. OF SAID SEC. 27 | JAN 1 TO DEC 31 | STOCKWATER 1888 | | | |

| SECTION | TOWN-SHIP | RANGE | NE | | | | | NW | | | | | SW | | | | | SE | | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | | NE | NW | SW | SE | | NE | NW | SW | SE | | NE | NW | SW | SE | | | |
| 26 | 13 N | R. 48 E | | | | | | | | | | | | | | | | | | | | | | | REFER TO REMARKS UNDER PROOF NO. V-04174 REGARDING STOCKWATERING |
| 27 | 13 N | R. 48 E | | | | | | | X | | | | | | | | | | | X | | | | | |

PLACE OF USE
40 ACRE DESCRIPTIONS

**PROOF NO.** V-05748

| CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|
| STEPHEN C. WILLIAMS, III | MORGAN SPRING | SW¼NE¼ SEC. 21, T 12N, R 48E, M.D.B.&M. S.22°30'W 28,510 FT. FROM THE NE COR. OF SEC. 38, T.13N, R.48E, M.D.B.&M. | MAY 1 TO NOV 30 | STOCKWATER 1871 | | | |

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | 12 N | 48 E | | | | | | | | | | | | | PLACE OF USE 40 ACRE DESCRIPTIONS | REFER TO REMARKS UNDER PROOF NO V-04174 REGARDING STOCKWATERING |

**PROOF NO.** V-07044

| CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|
| STONE SAFE REDLANDS ASSOC., LTD. A PARTNERSHIP, DBA ROCK SPRINGS RANCH | DURFEE SPRING | SW¼NW¼ SEC. 18, T.13N, R.48E, M.D.B.&M. (PROTRACTED) | JAN 1 TO DEC. 31 | STOCKWATER 1874 | | | |

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 13 N | 48 E | | | | | | | | | | | | | PLACE OF USE 40 ACRE DESCRIPTIONS | SUFFICIENT TO WATER 1,590 HEAD OF CATTLE, 13,300 SHEEP, AND 419 HORSES. |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| R-07220 | UNITED STATES OF AMERICA FOREST SERVICE | ALL WATERS WITHIN THE BOUNDARIES OF THE ALTA TOQUIMA WILDERNESS | NO DIVERSION ALLOWED | JAN 1 TO DEC 31 | WILDERNESS DEC. 5, 1989 | SEE REMARKS | SEE REMARKS | SEE REMARKS |

REMARKS: ALTA TOQUIMA WILDERNESS ESTABLISHED BY THE NEVADA WILDERNESS PROTECTION ACT OF 1989, (PUB L. 101-195, 103 STAT. 1784). VOLUME AND DIVERSION RATES OF WATER ARE NOT QUANTIFIED. THIS IS A NON-CONSUMPTIVE USE OF ALL WATER FLOWING IN ITS NATURAL STATE, EXCLUDING ADMINISTRATIVE SITES

| | PLACE OF USE | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|
| | 40 ACRE DESCRIPTIONS | | | |

| SECTION | TOWN-SHIP | RANGE | | 34 | | | | 35 | | | | 36 | | | | 31 | | | | 32 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T. | N, S | E | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| R-07221 | UNITED STATES OF AMERICA FOREST SERVICE | ALL WATERS WITHIN THE BOUNDARIES OF THE TABLE MOUNTAIN WILDERNESS | NO DIVERSION ALLOWED | JAN 1 TO DEC 31 | WILDERNESS DEC. 5, 1989 | SEE REMARKS | SEE REMARKS | SEE REMARKS |

REMARKS: TABLE MOUNTAIN WILDERNESS ESTABLISHED BY THE NEVADA WILDERNESS PROTECTION ACT OF 1989, (PUB L. 101-195, 103 STAT. 1784). VOLUME AND DIVERSION RATES OF WATER ARE NOT QUANTIFIED. THIS IS A NON-CONSUMPTIVE USE OF ALL SURFACE WATER FLOWING IN ITS NATURAL STATE, EXCLUDING ADMINISTRATIVE SITES

| | PLACE OF USE | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|
| | 40 ACRE DESCRIPTIONS | | | |

| SECTION | TOWN-SHIP | RANGE | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T. | N, S | E | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |

| PROOF NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY; PERIOD OF USE | PURPOSE & PRIORITY | DUTY FLOW CFS | DUTY AC.-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| R-07320 | U.S.D.I. BUREAU OF LAND MANAGEMENT | UNNAMED SPRING (8N46-1) | LOT 8 (SE¼NE¼) SEC. 1, T.09N., R.40E. M.D.B.&M., S 41°53'W 1,840 FT. FROM THE NE COR. OF SAID SEC. 1 | JAN 1 TO DEC. 31 | HUMAN & ANIMAL CONSUMPTION APRIL 17, 1926 | 0.010 | | |

| | PLACE OF USE — 40 ACRE DESCRIPTIONS | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|

| SECTION | TOWN- SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 1 | 9 N | 40 E | | | | | | | | | | | | | | | | X | | PUBLIC WATER RESERVE |

| PROOF NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY; PERIOD OF USE | PURPOSE & PRIORITY | DUTY FLOW CFS | DUTY AC.-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| R-07321 | U.S.D.I. BUREAU OF LAND MANAGEMENT | UNNAMED SPRING (12N47-17) | SW¼SE¼ SEC. 17, T.13N., R.47E. M.D.B.&M., N 28°24'E 18,540 FT. FROM THE SW COR. OF SAID SEC. 31 | JAN 1 TO DEC. 31 | HUMAN & ANIMAL CONSUMPTION APRIL 17, 1926 | 0.010 | | |

| | PLACE OF USE — 40 ACRE DESCRIPTIONS | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|

| SECTION | TOWN- SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 17 | 13 N | 47 E | | | | | | | | | | | | | | | X | | | PUBLIC WATER RESERVE |

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| R-07323 | U.S.D.I. BUREAU OF LAND MANAGEMENT | MONITOR LAKE 4 | SW¼SE¼, SEC. 09, T.13N, R.47E, M.D.B.&M., N 80°37'E 8,180 FT FROM THE SW COR. SEC. 8, T.13N, R.47E. M.D.B&M | JAN. 1 TO DEC. 31 | HUMAN & ANIMAL CONSUMPTION APRIL 17, 1926 | 0.010 | | |

| SECTION | TOWN- SHIP | RANGE | NE NW SW SE | NE NW SW SE | NE NW SW SE | NE NW SW SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|
| 9 | T.13 N | R.47 E | NE | NW | SW | SE X | |

PLACE OF USE — 40 ACRE DESCRIPTIONS

REMARKS: PUBLIC WATER RESERVE

| PROOF NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| R-07324 | U.S.D.I. BUREAU OF LAND MANAGEMENT | MONITOR LAKE 3 | NE¼SW¼ SEC. 09, T.13N, R.47E, M.D.B.&M., N 77°23'E 7,860 FT FROM THE SW COR SEC. 8, T.13N, R.47E. M.D.B&M | JAN 1 TO DEC 31 | HUMAN & ANIMAL CONSUMPTION APRIL 17, 1926 | 0.010 | | |

| SECTION | TOWN- SHIP | RANGE | NE NW SW SE | NE NW SW SE | NE NW SW SE | NE NW SW SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|
| 9 | T.13 N | R.47 E | NE | NW | SW | SE | 40 |

PLACE OF USE — 40 ACRE DESCRIPTIONS

REMARKS: PUBLIC WATER RESERVE.

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 782 CERT 360 | CAMILLO INDUSTRIES | BARLEY CREEK | ON THE E. LINE OF THE SW¼SW¼ SECTION 10; 800 FEET W. OF E LINE OF NE¼NW¼ SECTION 16; 1180 FEET E. OF E LINE NE¼NE¼ SECTION 16, 200 FEET E. OF NW COR. OF THE S¼SW¼ SEC. 8, ALL IN T 9N., R 47E., M D B & M | APR 1 TO SEPT 30 | IRRIGATION & DOMESTIC — DEC 30, 1907 | 0.655 | 3 | 195.50 |

PLACE OF USE — ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 7 | 9 N | R 47 E | | | | | | | | | 8¼ | | | | 8¼ | | | | 1.80 | 1st PRIORITY BY DECREE 6038 |
| 8 | 9 N | R 47 E | | | | | 1/0 | | | | 16.90 | | | | | | | | 18.20 | |
| 9 | 9 N | R 47 E | | | | | 7.50 | | | | | | | | | | | | 7.50 | |
| 16 | 9 N | R 47 E | | | | | N¼ 14.0 | | | | | | | | | | | | 14.00 | |
| 17 | 9 N | R 47 E | 8 80 | | | | | | | | | | | | | | | | 8.80 | |
| | | | | | | | | | | | | | | | TOTAL ACRES | | | | 64.50 | |

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 2213 CERT 414 | E. WAYNE & JEAN H. HAGE | PASCO CREEK (AKA COOK OR TUCKER CREEK) | SW¼NW¼ SEC 8, T 11N, R 48E. | APR 1 TO AUG 1 | IRRIGATION STOCKWATER & DOMESTIC — SEPT 18, 1911 | 0.318 | 2.44 | 77.56 |

PLACE OF USE — ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 32 | T 12 N | R 48 E | | | | | 14.33 | 14.82 | 4.84 | 8.02 | | | | | | | | | 31.01 | SHADED ACREAGE IS SUPPLEMENTED BY WATER UNDER PROOF NOS. V-03184 AND V-05739. |
| TOTAL ACRES: | | | | | | | | | | | | | | | | | | | 31.01 | |

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT: 2244 CERT. 436 | E. WAYNE & JEAN N. HAGE | MEADOW CREEK | 400 FT. DUE SOUTH OF THE N SEC CORNER ON THE NORTH BOUNDARY OF SEC. 7, T 9N., R.46E., M D B & M | MAY 1 TO OCT 1 | IRRIGATION & DOMESTIC OCT 16, 1911 | 0.35 | 3 DUTY BY STATUTE | 105.00 |

| SECTION | TOWN- SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | 9 N | 46 E | 10.00 | | | | | | | | | | | | | | | | 10.00 | |
| 8 | 9 N | 46 E | | 10.00 | | 16.00 | | | | | | | | | | | | | 26.00 | |

**40 ACRE DESCRIPTIONS**

| | | | | | | | | | | | | | | | | | | | | | TOTAL ACRES: 35.00 | |

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT: 3361 CERT. 2606 | E. WAYNE & JEAN N HAGE | BARLEY CREEK AND TRIBUTARIES (MEADOW CREEK & WIDOW SMITH CREEK) | SW¼SE¼ SEC. 7, T.10N. R.48E. M D B & M., S 88°40'W, 910.0 FT FROM S¼ COR. SAID SEC 1 | APR. 1 TO JUL. 31 | SUPPLEMENTAL IRRIGATION & DOMESTIC APR. 23 1915 | 1.205 | 2.44 | 294.00 |

**40 ACRE DESCRIPTIONS**

| SECTION | TOWN- SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 10 N | 46 E | 30.30 | 3.10 | 21.40 | | 7.40 | 7.50 | | | | | | | | | | | 102.50 | |
| 6 | 10 N | 47 E | | | | 24.90 | | 8.90 | | | | | | | | | | | 18.00 | |

| | | | | | | | | | | | | | | | | | | | TOTAL ACRES: 120.50 | |

SHADED ACREAGE IS SUPPLEMENTED BY WATER UNDER PROOF NO. V-04488

| PERMIT NO | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | ACRES PER SECTION | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| PERMIT 3382 CERT 2556 | E WAYNE & JEAN N HAGE | BARLEY CREEK AND TRIBUTARIES | NW¼NW¼ SEC 4, T 10N, R 47E, M.D.B.&M, N.28°41'W 1,1830 FT FROM NW COR SAID SEC 4 | APR 1 TO JUL 31 | SUPPLEMENTAL IRRIGATION APR. 23, 1915 | | 2 651 | 1 80 | 478 00 | |

**PLACE OF USE / ACRE DESCRIPTIONS**

| SECTION | TOWN-SHIP | RANGE | NE (NE NW SW SE) | NW (NE NW SW SE) | SW (NE NW SW SE) | SE (NE NW SW SE) | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|
| 36 | T 11 N | R 46 E | 18.70 | 34.40 | 34.80 | 22.80 | |
| | | | 38.80 | 34.20 | 37.00 | 39.40 | |
| | | | TOTAL ACRES | | | | 265 10 |
| | | | | | | | 265 10 |

| PERMIT NO | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| PERMIT 3404 CERT 742 | E WAYNE & JEAN N HAGE | ANDREW CREEK | IN THE EAST PART OF THE SE¼SW¼ SEC 21, T 11N, R 46E, M.D.B.&M | APR 1 TO OCT 31 | IRRIGATION DOMESTIC 5524 | 1 2005 | 3 00 | 360 15 | SHADED ACREAGE IS SUPPLEMENTED BY WATER UNDER PROOF NO V 04466 |

**PLACE OF USE / ACRE DESCRIPTIONS**

| SECTION | TOWN-SHIP | RANGE | NE (NE NW SW SE) | NW (NE NW SW SE) | SW (NE NW SW SE) | SE (NE NW SW SE) | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|
| 21 | T 11 N | R 46 E | 28.50 | 11.00 | 36.30 | | 80.05 |
| 22 | T 11 N | R 46 E | 40.00 | | | | 40.00 |
| | | | TOTAL ACRES | | | 40.00 | 120 05 |

Remarks: SUPPLEMENTED BY WATER UNDER PROOF NOR V-01186 AND V-01186

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 3440 CERT. 3212 | WARREN C. HUNT, ETHELYN HUNT, DONALD B HUNT AND ESTHER CECELIA HUNT | NORTHUMBERLAND SPRINGS | NE¼SE¼ SEC. 08, T.12N., R.46E., M.D.B.&M. S 04°09'E. 2,313.7 FT FROM THE SE COR. SAID SEC 08. | MAR 1 TO OCT. 31 | IRRIGATION JUN 16, 1915 | 0.124 | 4.85 | 80.15 |

### PLACE OF USE — 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | | | | |
| 9 | 12 N | 46 E | | | | | | | | | | | | | | | | 12.40 | | | | 12.40 | |

TOTAL ACRES 12.40

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC.-FT./ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 4784 CERT 1212 | E WAYNE AND JEAN N HAGE | MOSQUITO CREEK | SW¼NE¼ SEC. 32, T 12N, R 47E, M.D.B.&M., S 44°09'E 3,880 FT. FROM THE NW COR. SAID SEC 32 | MAR 1 TO NOV 1 | IRRIGATION DEC 17, 1917 | 2.3828 | 4.80 | 1134.05 |

### PLACE OF USE — 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 29 | 12 N | 47 E | | 17.62 | | 40.00 | | | | | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | | | | | 178.84 | SHADED ACREAGE IS SUPPLEMENTED BY WATER UNDER PROOF NO V-04466 |
| 32 | 12 N | 47 E | | | | | | | 4.53 | 14.31 | | | | | | | | | | 57.42 | |

TOTAL ACRES 236.28

ACRES PER SECTION: 236.28

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC-FT |
|---|---|---|---|---|---|---|---|---|
| PERMIT. 4785 CERT. 1213 | E. WAYNE AND JEAN H HAGE | MOSQUITO CREEK | NW¼NE¼ SEC 31, T 12N, R 47E, M.D.B.&M. S 69°10'W 1,366 FT FROM THE NE COR. SAID SEC 31 | MAR 1 TO NOV 1 | IRRIGATION DEC 17, 1917 | 3.2 | 4.80 | 1938.00 |

**PLACE OF USE / ACRE DESCRIPTIONS**

| SECTION | TOWN-SHIP | RANGE | N... | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | T 12 N | R 47 E | | | | 40.00 | | | 40.00 | 40.00 | 40.00 | 40.00 | | | | | | | | | 120.00 |
| 31 | T 12 N | R 47 E | | | | | | | | | | 40.00 | 40.00 | 40.00 | | | | | | 200.00 |
| | | | | | | | | | | | | | | | TOTAL ACRES: | | | | | 320.00 |

REMARKS: SHADED ACREAGE IS SUPPLEMENTED BY WATER UNDER PROOF NO V 04465

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC-FT |
|---|---|---|---|---|---|---|---|---|
| PERMIT. 13929 CERT. 2929 | M C AND GRACE WINFIELD | COMBINATION SPRINGS | SE¼NE¼ SEC 25, T 10N, R 46E, M.D.B&M, N.19°20'W 3,795 FT. FROM THE SE COR. OF SAID SEC 25. | JAN 1 TO DEC 31 | STOCKWATER OCT 18, 1919 | 0.003 | | |

**PLACE OF USE / ACRE DESCRIPTIONS**

| SECTION | TOWN-SHIP | RANGE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | T 9 N | R 46 E | | | | | | | | | | | | | | | | | | |

REMARKS: 0.003 CFS OR SUFFICIENT TO WATER 90 HEAD OF CATTLE AND HORSES

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT. 10606 CERT. 2314 | UNITED STATES OF AMERICA, FOREST SERVICE | UNNAMED SPRING | M.D.B.&M., N 45°42'W 26,612 FT. FROM SE COR. OF SEC. 1, T.1N., R.45E., M.D.B.&M. | APR 1 TO DEC 1 | MEADOW CR RANGER STATION DOMESTIC DEC 26, 1940 | 0.001 | | 0.55 |

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 21 | T 10 N | R 45 E | | | | | | | | | | | X | | | | | | | |

PLACE OF USE — 48 ACRE DESCRIPTIONS

REMARKS: DOMESTIC USE FOR THE MEADOW CREEK RANGER STATION. SAME AS PROOF R-04178

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC.-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 10618 CERT. 2879 | UNITED STATES OF AMERICA - FOREST SERVICE | UNNAMED SPRING | NW¼SE¼ SEC. 13, T.11N., R.45E., M.D.B.&M., S 74°18'E 8,742.8 FT. FROM THE S¼ COR. OF SEC. 17, T.11N., R.46E., M.D.B.&M. | MAY 1 TO OCT 31 | RECREATIONAL & DOMESTIC JULY 1 1941 | 0.001 | | 0.55 |

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | |
| 13 | T 11 N | R 46 E | | | | | | X | | | | | | | | | | | | |

PLACE OF USE — 40 ACRE DESCRIPTIONS

REMARKS: DOMESTIC USE FOR THE USFS PINE CREEK CAMPGROUND

| PERMIT NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT. 20432 CERT 8318 | UNITED STATES OF AMERICA, FOREST SERVICE, REGION 4 | PINE CREEK | NW¼SE¼ SEC 13, T 11N , R 45E , M D B & M , S 38°10 B' E 2,905 7 FT FROM THE COMMON CORNER OF THE SE COR OF SEC 12, & NE COR OF SEC 13,T.11N , R 45E , M D B & M | APR 15 TO NOV. 15 | DOMESTIC (CAMPGROUND) AUG 10, 1952 | 0 004 | | 1 71 |

| SECTION | TOWN- SHIP | RANGE | | | | | | | PLACE OF USE | | | | | | | ACRES PER SECTION | | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | .T 11 N , R 45 E | | NE | NW | SW | X | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | |

40 ACRE DESCRIPTIONS

| PERMIT NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT / ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 28754 CERT 10662 | E WAYNE AND JEAN N HAGE | PINE CREEK | SW¼NW¼ SEC 18, T 11N , R 46E , M D B & M , N 00°W 386.72 FT FROM THE W¼ COR SAID SEC 18 | JAN 1 TO DEC 31 | IRRIGATION & DOMESTIC JUN 2, 1972 | 5 4 | HARVEST: 4.00 MEADOW PASTURE: 2 00 DIVERS PASTURE: 1 80 | 497.28 |

DOMESTIC USE FOR THE USFS PINE CREEK CAMPGROUND

40 ACRE DESCRIPTIONS

| SECTION | TOWN- SHIP | RANGE | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | .T 11 N , R 46 E | | | | | | | | | | | | 40.00 | | 40.00 | | 40.00 | 40.00 | 160.00 | |
| 3 | .T 11 N , R 46 E | | | 38.39 | | | | | | | | | | | | | | | 38.39 | |
| 9 | .T 11 N , R 46 E | | | | | | | | | 40.00 | | | 40.00 | 40.00 | | | | | 120.00 | |
| 10 | .T 11 N , R 46 E | | | | | | 39.39 | 39.39 | | | | | | | | | | | 78.78 | |
| | | | | | | | | | | | | | | | TOTAL ACRES: | | | | 278 17 | |

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT: 26757 CERT 10863 | E. WAYNE AND JEAN M. HAGE | PINE CREEK | SW¼NW¼ SEC 18, T.11N, R.46E, M.D.B.&M., N 00°W 386.72 FT FROM THE W¼ COR SAID SEC 18 | JAN 1 TO DEC 31 | IRRIGATION & DOMESTIC JUN 2, 1972 | 5.4 | HARVEST: 4.00 MEADOW PASTURE 2.00 DIVERS PASTURE 1.50 | 778.53 |

### PLACE OF USE — 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE NE | NE NW | NE SW | NE SE | NW NE | NW NW | NW SW | NW SE | SW NE | SW NW | SW SW | SW SE | SE NE | SE NW | SE SW | SE SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | T 11 N | R 46 E | | 39.38 | | | | | 40.00 | 40.00 | | | 40.00 | 28.84 | 36.48 | 40.00 | | | 80.00 139.36 39.38 |

**TOTAL ACRES** 268.76 **268.76**

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|
| PERMIT: 27871 CERT 11118 | WESTERN STATES MINERALS CORPORATION | UNDERGROUND | NE¼SE¼ SEC 24, T 13N, R.46E, M.D.B&M. N 28°23'04"W 23,026.63 FT FROM E¼ COR OF SEC 8, T 12N, R.46E. M.D.B&M | JAN 1 TO DEC 31 | MINING MILLING AND DOMESTIC DEC 26, 1973 | 0.0669 | 15.77 MILLION GALLONS ANNUALLY |

### PLACE OF USE — 40 ACRE DESCRIPTIONS

| SECTION | TOWN-SHIP | RANGE | NE NE | NE NW | NE SW | NE SE | NW NE | NW NW | NW SW | NW SE | SW NE | SW NW | SW SW | SW SE | SE NE | SE NW | SE SW | SE SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24 | T 13 N | R 46 E | x | | | x | | | | | | | | | x | | | | |
| 19 | T 13 N | R 46 E | | | | | | x | x | | | | | | | | | | |

**REMARKS:** THE TOTAL COMBINED DUTY OF WATER ISSUED UNDER THIS CERTIFICATE AND ANY CERTIFICATES ISSUED UNDER PERMITS 27973, CERT 11170, 43788, CERT 12804; AND 47602, CERT 12824 SHALL NOT EXCEED 40.0 MILLION GALLONS ANNUALLY

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 27973 CERT. 11170 | WESTERN STATES MINERALS CORPORATION | SPRING-FED POND | NW¼NW¼ SEC. 18, T 13N, R 46E, M D B & M, N 29°33'08"W, 23,026.53 FT FROM E¼ COR OF SEC. 8, T.12N, R 46E, M D B & M | JAN 1 TO DEC. 31 | MINING DEC 26, 1973 | 1 0 | | 16 77 MILLION GALLONS ANNUALLY |

**PLACE OF USE — ACRE DESCRIPTIONS**

| SECTION | TOWN-SHIP | RANGE | NE · NE | NE · NW | NE · SW | NE · SE | NW · NE | NW · NW | NW · SW | NW · SE | SW · NE | SW · NW | SW · SW | SW · SE | SE · NE | SE · NW | SE · SW | SE · SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24 | T 13 N | R 46 E | x | | | x | x | | | | | | | | | | | | |
| 18 | T 13 N | R 46 E | | | | | | | x | x | | | | | | | x | x | |

**REMARKS:** THE TOTAL COMBINED DUTY OF WATER ISSUED UNDER THIS CERTIFICATE AND ANY CERTIFICATES ISSUED UNDER PERMITS 27971, CERT. 11169, 43798, CERT 12904; AND 47602, CERT. 12824 SHALL NOT EXCEED 40 0 MILLION GALLONS ANNUALLY

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 28118 CERT. 9928 | ALL MINERALS CORPORATION | UNDERGROUND | SW¼SW¼ SEC. 13, T 13N, R 46E, M D B & M, S 81°26'E 2,570 FT FROM NW COR OF SEC 14, T 12N, R 46E, M D B & M | JAN 1 TO DEC. 31 | MINING & MILLING DEC 26 1973 | 0 3 | | 16 77 MILLION GALLONS ANNUALLY |

**PLACE OF USE — ACRE DESCRIPTIONS**

| SECTION | TOWN-SHIP | RANGE | NE · NE | NE · NW | NE · SW | NE · SE | NW · NE | NW · NW | NW · SW | NW · SE | SW · NE | SW · NW | SW · SW | SW · SE | SE · NE | SE · NW | SE · SW | SE · SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 | T 13 N | R 46 E | | | | x | | x | | | | | x | | | x | x | | 40 |

**REMARKS**

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| 40676 CERT 13331 | JAMES R. BOYCE & CHRISTINE D BOYCE | UNDERGROUND (DRY LAKE WELL) | NW¼SW¼ SEC 28, T.13N, R.47E, M.D.B.&M, N 81°E, 16,950 FT. FROM SW COR OF SEC 28, T.13N. R.48E, M.D.B.&M. | JAN. 1 TO DEC. 31 | STOCKWATER | 0.0082 | SEE REMARKS | |

| SECTION | TOWN-SHIP | RANGE | | NE | | | | NW | | | | SW | | | | SE | | | | PLACE OF USE ACRE DESCRIPTIONS | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | | |
| 28 | T 13 N | R 47 E | | | X | | | | | | | X | | | | | | | | 40 | | SUFFICIENT TO WATER 200 HEAD OF CATTLE |

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT/ ACRE TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|
| 43014 CERT 11437 | E. WAYNE AND JEAN N HAGE | UNDERGROUND | NW¼NE¼ SEC. 20, T.12N, R.47E, M.D.B.&M. S.78°01'16"W 1,777.08 FT FROM THE NE COR OF SAID SEC. 20 | JUN 1 TO DEC.31 | STOCKWATER | 0.0094 | SEE REMARKS |

| SECTION | TOWN-SHIP | RANGE | | NE | | | | NW | | | | SW | | | | SE | | | | PLACE OF USE ACRE DESCRIPTIONS | ACRES PER SECTION | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | | | |
| 20 | T 12 N | R 47 E | | | | | | | | | | | | | | | | | | 40 | | SUFFICIENT TO WATER 300 HEAD OF CATTLE |

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 43788 CERT. 12604 | WESTERN STATES MINERALS CORPORATION | UNDERGROUND | NE¼NE¼ SEC 24, T 13N, R 46E, M.D.B.&M, N 25°37'56"W, 26,134.37 FT FROM E¼ COR OF SEC 8, T 12N, R 46E, M.D.B.&M. | JAN 1 TO DEC 31 | MINING MILLING AND DOMESTIC DEC 28, 1973 | 0.134 | | 18.43 MILLION GALLONS ANNUALLY |

**40 ACRE DESCRIPTIONS**

**PLACE OF USE**

| SECTION | TOWN-SHIP | RANGE | NE NE | NW NE | SW NE | SE NE | NE NW | NW NW | SW NW | SE NW | NE SW | NW SW | SW SW | SE SW | NE SE | NW SE | SW SE | SE SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | T 13 N. | R 46 E. | x | x | x | x | | | | | | | | | | | | | |
| 24 | T 13 N. | R 46 E. | x | x | | x | | | | | | | | | | | | | |
| 18 | T 13 N. | R 46 E. | | | | | x | x | x | x | x | x | x | x | x | x | x | x | |
| 19 | T 13 N. | R 46 E. | | | | | x | x | x | x | x | x | x | | | | | | |

| PERMIT NO. | CLAIMANT | SOURCE | POINT(S) OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT 47602 CERT 12824 | WESTERN STATES MINERALS CORPORATION | UNDERGROUND | NE¼NE¼ SEC 24, T 13N, R 46E, M.D.B.&M, N 25°37'56"W, 26,134.37 FT. FROM E¼ COR. OF SEC 8, T 12N, R 46E, M.D.B.&M | JAN 1 TO DEC 31 | MINING MILLING AND DOMESTIC JAN 25, 1984 | 0.426 | | 82.38 MILLION GALLONS ANNUALLY |

**40 ACRE DESCRIPTIONS**

**PLACE OF USE**

| SECTION | TOWN-SHIP | RANGE | NE NE | NW NE | SW NE | SE NE | NE NW | NW NW | SW NW | SE NW | NE SW | NW SW | SW SW | SE SW | NE SE | NW SE | SW SE | SE SE | ACRES PER SECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | T 13 N. | R 46 E. | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | |
| 13 | T 13 N. | R 46 E. | x | x | x | x | | | | | | | | | | | | | |
| 24 | T 13 N. | R 46 E. | x | x | | x | | | | | | | | | | | | | |
| 18 | T 13 N. | R 46 E. | | | | | x | x | x | x | x | x | x | x | x | x | x | x | |
| 18 | T 13 N. | R 46 E. | | | | | x | x | x | x | x | x | x | | | | | | |
| 19 | T 13 N. | R 46 E. | | | | | x | x | x | | | | | | | | | | |

**REMARKS**

THE TOTAL COMBINED DUTY OF WATER ISSUED UNDER THIS CERTIFICATE AND ANY CERTIFICATES ISSUED UNDER PERMITS 27971, CERT. 11169, 27972, CERT. 11170, AND 47602, CERT. 12824 SHALL NOT EXCEED 40.0 MILLION GALLONS ANNUALLY.

THE TOTAL COMBINED DUTY OF WATER ISSUED UNDER THIS CERTIFICATE AND ANY CERTIFICATES ISSUED UNDER PERMITS 27971, CERT. 11169, 27972, CERT. 11170, AND 43788, CERT. 12604 SHALL NOT EXCEED 40.0 MILLION GALLONS ANNUALLY.

| PERMIT NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT: 48411 CERT: 12307 | E. WAYNE AND JEAN N. HAGE | UNDERGROUND | NE¼NE¼ SEC 7, T 12N, R 47E., M.D.B&M, S.60°04'20"E, 1,849.7 FT FROM THE N¼ COR OF SAID SECTION | NOV 15 TO JUNE 1 | STOCKWATER SEPT 18, 1964 | 0.003 | | SEE REMARKS |

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |
| 7 | T 12 N | R 47 E | X | | | | | | | | | | | | | | | |

PLACE OF USE: 40 ACRE DESCRIPTIONS

| ACRES PER SECTION | REMARKS |
|---|---|
| | SUFFICIENT TO WATER 300 HEAD OF CATTLE |

| PERMIT NO. | CLAIMANT | SOURCE | PORTION OF DIVERSION | YEARLY PERIOD OF USE | PURPOSE & PRIORITY | FLOW CFS | DUTY AC-FT./ACRE | TOTAL AC-FT. |
|---|---|---|---|---|---|---|---|---|
| PERMIT: 50244 CERT: 14278 | BOARD OF NYE COUNTY COMMISSIONERS | UNDERGROUND | SW¼NW¼ SEC. 26, T 9N, R 45E., M.D.B&M, N.13°34'E, 839 FT FROM THE W¼ COR OF SAID SEC 26. | JAN 1 TO DEC 31 | QUASI MUNICIPAL | 0.056 | | 1.81 MILLION GALLONS ANNUALLY |

| SECTION | TOWN-SHIP | RANGE | NE | | | | NW | | | | SW | | | | SE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE | NE | NW | SW | SE |
| 25 | T 9 N | R 45 E | X | | | | | | | | | | | | | | | |
| 26 | T 9 N | R 45 E | | | | | | | | | | | X | | | | | |

PLACE OF USE: 40 ACRE DESCRIPTIONS

| ACRES PER SECTION | REMARKS |
|---|---|
| | WATER TO BE USED FOR FIRE PROTECTION AND DUST CONTROL WITHIN THE TOWN OF BELMONT |

## APPENDIX A: STOCKWATER SOURCE DESCRIPTION.

| | |
|---|---|
| PROOF NO.: | 01081 |
| CLAIMANT: | E. WAYNE & JEAN N. HAGE |
| DRAINAGE AREA: | MEADOW CANYON CREEK |
| USE: | STOCKWATER |
| PRIORITY DATE: | 1874 |
| REMARKS: | STOCKWATER SOURCES FILED UNDER PROOF OF APPROPRIATION FOR IRRIGATION. |

| SOURCE NAME | POINT OF DIVERSION / 40 ACRE PARCEL DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|
| SOLDIER SPRING | SECTION: 9 | T. 10 N. | R. 45 E. | NW ¼ | SW ¼ | |
| REBELLION SPRING | SECTION: 16 | T. 10 N. | R. 45 E. | SE ¼ | NE ¼ | |
| LOWER REBELLION SPRING | SECTION: 15 | T. 10 N. | R. 45 E. | SW ¼ | NW ¼ | |
| ANDERSON SPRING | SECTION: 15 | T. 10 N. | R. 45 E. | SW ¼ | NW ¼ | |
| PIPE ORGAN SPRING | SECTION: 15 | T. 10 N. | R. 45 E. | SW ¼ | NE ¼ | |
| LONE PINE SPRING | SECTION: 14 | T. 10 N. | R. 45 E. | SW ¼ | NE ¼ | |
| PETERSON SPRING | SECTION: 20 | T. 10 N. | R. 45 E. | SE ¼ | NE ¼ | |
| MACAFEE SPRING | SECTION: 20 | T. 10 N. | R. 45 E. | NE ¼ | NE ¼ | |
| BOX SPRING | SECTION: 21 | T. 10 N. | R. 45 E. | NW ¼ | SW ¼ | |
| HAGE MEADOW SPRING | SECTION: 21 | T. 10 N. | R. 45 E. | SW ¼ | SE ¼ | |
| LITTLE TABLE MOUNTAIN SPRING | SECTION: 23 | T. 10 N. | R. 45 E. | NE ¼ | SE ¼ | |
| BULL FRAME SPRING | SECTION: 29 | T. 10 N. | R. 45 E. | SW ¼ | SE ¼ | |
| BRANDO SPRING | SECTION: 27 | T. 10 N. | R. 45 E. | NW ¼ | NE ¼ | |
| MCCANN SPRING | SECTION: 27 | T. 10 N. | R. 45 E. | SW ¼ | NE ¼ | |
| HUMPHREY SPRING | SECTION: 27 | T. 10 N. | R. 45 E. | NE ¼ | NE ¼ | |
| BADGER SPRING | SECTION: 26 | T. 10 N. | R. 45 E. | SW ¼ | NE ¼ | |
| WAYNE'S SPRING | SECTION: 26 | T. 10 N. | R. 45 E. | NW ¼ | NE ¼ | |
| CINIBAR SPRING | SECTION: 32 | T. 10 N. | R. 45 E. | NE ¼ | SW ¼ | |
| FLOWER SPRING | SECTION: 33 | T. 10 N. | R. 45 E. | NE ¼ | NE ¼ | |
| WARREN SPRING | SECTION: 33 | T. 10 N. | R. 45 E. | SE ¼ | NE ¼ | |
| SIDE HILL SPRING | SECTION: 33 | T. 10 N. | R. 45 E. | NE ¼ | SE ¼ | |
| RYECROFT SPRING | SECTION: 34 | T. 10 N. | R. 45 E. | SW ¼ | SE ¼ | |
| SIDE ROCK SPRING | SECTION: 5 | T. 9 N. | R. 45 E. | NE ¼ | SW ¼ | |
| SANTOS SPRING | SECTION: 9 | T. 9 N. | R. 45 E. | NW ¼ | SW ¼ | |
| SAGE HEN SPRING | SECTION: 3 | T. 9 N. | R. 45 E. | SW ¼ | NW ¼ | |

630

| PROOF NO.: | 01183 | | POINT OF DIVERSION 40 ACRE PARCEL DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMANT: | E. WAYNE & JEAN N. HAGE | SOURCE NAME | | | | | | |
| | | RUTH'S SPRING | SECTION: 2 | T. 10 N. | R. 45 E. | SW ¼ | SE ¼ | |
| | | CORCORAN DIVIDE SPRING | SECTION: 13 | T. 10 N. | R. 45 E. | SE ¼ | SW ¼ | |
| DRAINAGE AREA: | SMITH CREEK AKA WIDOW SMITH CREEK, SOUTH FORK WIDOW SMITH CREEK | ARKANSAS SPRING | SECTION: 13 | T. 10 N. | R. 45 E. | NE ¼ | SE ¼ | |
| | | SMITH SPRING | SECTION: 18 | T. 10 N. | R. 46 E. | NW ¼ | SW ¼ | |
| | | CORCORAN SPRING | SECTION: 18 | T. 10 N. | R. 46 E. | NE ¼ | SW ¼ | |
| USE: | STOCKWATER | BROWN TROUT SPRING | SECTION: 18 | T. 10 N. | R. 46 E. | SE ¼ | SW ¼ | |
| | | SHEEP SPRING | SECTION: 24 | T. 10 N. | R. 45 E. | NW ¼ | SW ¼ | |
| | | HOOPER SPRING | SECTION: 24 | T. 10 N. | R. 45 E. | SE ¼ | NE ¼ | |
| PRIORITY DATE: | 1874 | RODEAR SPRING | SECTION: 19 | T. 10 N. | R. 46 E. | NW ¼ | NW ¼ | |
| | | STONE HOUSE SPRING | SECTION: 20 | T. 10 N. | R. 46 E. | NE ¼ | NW ¼ | |
| REMARKS: | STOCKWATER SOURCES FILED UNDER PROOF OF APPROPRIATION FOR IRRIGATION. | GARDEN SPRING | SECTION: 28 | T. 10 N. | R. 46 E. | SW ¼ | NW ¼ | |

| PROOF NO.: | 01185 | | |
|---|---|---|---|
| CLAIMANT: | E. WAYNE & JEAN N. HAGE | | |
| DRAINAGE AREA: | PINE CREEK AND TRIBUTARIES | | |
| USE: | STOCKWATER | | |
| PRIORITY DATE: | 1874 | | |
| REMARKS: | STOCKWATER SOURCES FILED UNDER PROOF OF APPROPRIATION FOR IRRIGATION. | | |

| SOURCE NAME | POINT OF DIVERSION 40 ACRE PARCEL DESCRIPTION | | |
|---|---|---|---|
| LOG ROAD SPRING | SECTION: 9 | T. 11 N., R. 45 E. | SW ¼ NW ¼ |
| GHOST SPRING | SECTION: 10 | T. 11 N., R. 45 E. | SE ¼ NW ¼ |
| HOWARD'S SPRING | SECTION: 10 | T. 11 N., R. 45 E. | NE ¼ SE ¼ |
| FIDDLER SPRING | SECTION: 11 | T. 11 N., R. 45 E. | SW ¼ SW ¼ |
| LITTLE NORTH FORK SPRING | SECTION: 17 | T. 11 N., R. 45 E. | SE ¼ SE ¼ |
| BIG NORTH FORK SPRING | SECTION: 15 | T. 11 N., R. 45 E. | SW ¼ SW ¼ |
| COW CANYON SPRING | SECTION: 15 | T. 11 N., R. 45 E. | SE ¼ SE ¼ |
| ODDIE SPRING | SECTION: 18 | T. 11 N., R. 46 E. | SE ¼ SE ¼ |
| MILL SITE SPRING | SECTION: 21 | T. 11 N., R. 45 E. | SW ¼ SW ¼ |
| BIG SOUTH FORK SPRING #1 | SECTION: 22 | T. 11 N., R. 45 E. | NW ¼ SW ¼ |
| BIG SOUTH FORK SPRING #2 | SECTION: 22 | T. 11 N., R. 45 E. | NW ¼ NW ¼ |
| ERNST SPRING | SECTION: 23 | T. 11 N., R. 45 E. | SE ¼ NW ¼ |
| MCMONIGAL SPRING | SECTION: 24 | T. 11 N., R. 45 E. | NE ¼ SE ¼ |
| LAKE SPRING | SECTION: 29 | T. 11 N., R. 45 E. | NE ¼ NW ¼ |
| SUMMIT TRAIL SPRING | SECTION: 29 | T. 11 N., R. 45 E. | SW ¼ SE ¼ |
| LITTLE SOUTH FORK SPRING | SECTION: 28 | T. 11 N., R. 45 E. | SW ¼ NE ¼ |
| ANDREWS PASS SPRING | SECTION: 25 | T. 11 N., R. 45 E. | NW ¼ NW ¼ |

| | SOURCE NAME | POINT OF DIVERSION 40 ACRE PARCEL DESCRIPTION |
|---|---|---|
| **PROOF NO.:** 01186 | | |
| **CLAIMANT:** E. WAYNE & JEAN N. HAGE | | |
| **DRAINAGE AREA:** ANDREW'S CREEK AND TRIBUTARIES | COOK SPRING | SECTION: 26 .T. 11 N. .R. 45 E. SE ¼ SW ¼ |
| | TRAIL CROSSING SPRING | SECTION: 26 .T. 11 N. .R. 45 E. SE ¼ SE ¼ |
| | BIG ANDREWS SPRING | SECTION: 34 .T. 11 N. .R. 45 E. SE ¼ NW ¼ |
| | WHITE ROCK SPRING | SECTION: 33 .T. 11 N. .R. 45 E. SE ¼ SE ¼ |
| | LITTLE ANDREWS SPRING | SECTION: 34 .T. 11 N. .R. 45 E. NW ¼ SE ¼ |
| | TRAIL CANYON SPRING | SECTION: 31 .T. 11 N. .R. 46 E. SW ¼ SE ¼ |
| **USE:** STOCKWATER | WINDY PASS SPRING | SECTION: 3 .T. 10 N. .R. 45 E. NE ¼ NW ¼ |
| | MAHAGONY SPRING | SECTION: 3 .T. 10 N. .R. 45 E. NE ¼ SE ¼ |
| **PRIORITY DATE:** 1874 | DEER HOLLOW SPRING #1 | SECTION: 3 .T. 10 N. .R. 45 E. SE ¼ NE ¼ |
| | DEER HOLLOW SPRING #2 | SECTION: 3 .T. 10 N. .R. 45 E. SE ¼ NE ¼ |
| **REMARKS:** STOCKWATER SOURCES FILED UNDER PROOF OF APPROPRIATION FOR IRRIGATION | LAURA'S SPRING | SECTION: 2 .T. 10 N. .R. 45 E. SW ¼ NE ¼ |

| PROOF NO.: | 04465 | | | | |
|---|---|---|---|---|---|
| CLAIMANT: | E. WAYNE & JEAN N. HAGE | | | | |
| DRAINAGE AREA: | MOSQUITO CREEK AND TRIBUTARIES | | | | |
| USE: | STOCKWATER | | | | |
| PRIORITY DATE: | 1874 | | | | |
| REMARKS: | STOCKWATER SOURCES FILED UNDER PROOF OF APPROPRIATION FOR IRRIGATION. | | | | |

| SOURCE NAME | POINT OF DIVERSION 40 ACRE PARCEL DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|
| HAYSTACK SPRING #1 | SECTION: 33 | T. 11 N. | R. 47 E. | NE ¼ | SE ¼ |
| BREAKOUT SPRING | SECTION: 36 | T. 11 N. | R. 47 E. | NW ¼ | SW ¼ |
| WILL JAMES SPRING | SECTION: 1 | T. 10 N. | R. 47 E. | NE ¼ | NW ¼ |
| HOOPER'S TRAP SPRING | SECTION: 3 | T. 10 N. | R. 47 E. | SE ¼ | NE ¼ |
| DROP OFF SPRING | SECTION: 2 | T. 10 N. | R. 47 E. | SE ¼ | NW ¼ |
| SCORPION SPRING | SECTION: 1 | T. 10 N. | R. 47 E. | SE ¼ | NW ¼ |
| MARGARET SPRING | SECTION: 1 | T. 10 N. | R. 47 E. | SW ¼ | SE ¼ |
| RAMONA SPRING | SECTION: 13 | T. 10 N. | R. 47 E. | NE ¼ | SW ¼ |
| HIGHPOINT SPRING | SECTION: 11 | T. 10 N. | R. 47½ E. | NW ¼ | SW ¼ |
| RODEAR FLAT SPRING | SECTION: 13 | T. 10 N. | R. 47½ E. | NE ¼ | NW ¼ |
| HAILSTORM SPRING | SECTION: 24 | T. 10 N. | R. 47 E. | SW ¼ | NW ¼ |
| CUT OFF SPRING | SECTION: 24 | T. 10 N. | R. 47½ E. | NW ¼ | NW ¼ |
| DRY LAKE SPRING | SECTION: 12 | T. 10 N. | R. 47 E. | SE ¼ | NW ¼ |
| NORTHTRAIL SPRING | SECTION: 36 | T. 12 N. | R. 47 E. | NE ¼ | NW ¼ |
| BACH SPRING | SECTION: 36 | T. 12 N. | R. 47 E. | SE ¼ | NE ¼ |
| JEAN'S SPRING | SECTION: 36 | T. 12 N. | R. 47 E. | NW ¼ | SW ¼ |
| JOHNSON SPRING | SECTION: 35 | T. 12 N. | R. 47 E. | SE ¼ | NE ¼ |
| REED SPRING | SECTION: 2 | T. 11 N. | R. 47 E. | NE ¼ | SE ¼ |
| ARROWHEAD SPRING | SECTION: 1 | T. 11 N. | R. 47 E. | SW ¼ | SE ¼ |
| LEFT FORK SPRING | SECTION: 1 | T. 11 N. | R. 47 E. | NE ¼ | SE ¼ |
| DESEPTION SPRING | SECTION: 33 | T. 11 N | R. 47 E. | SE ¼ | NW ¼ |
| STIENENGER SPRING | SECTION: 11 | T. 11 N. | R. 47 E. | NE ¼ | NW ¼ |
| BORREGGO SPRING | SECTION: 11 | T. 11 N. | R. 47 E. | NW ¼ | SE ¼ |
| STAMPEDE SPRING | SECTION: 12 | T. 11 N. | R. 47 E. | SE ¼ | NE ¼ |
| HAGE SPRING | SECTION: 12 | T. 11 N. | R. 47 E. | NE ¼ | SE ¼ |
| STUPER SPRING | SECTION: 13 | T. 11 N. | R. 47 E. | NW ¼ | SW ¼ |
| AMBUSH SPRING | SECTION: 13 | T. 11 N. | R. 47 E. | SE ¼ | SW ¼ |
| KAY SPRING | SECTION: 13 | T. 11 N. | R. 47 E. | SE ¼ | SW ¼ |
| RUNAWAY SPRING | SECTION: 23 | T. 11 N. | R. 47 E. | SE ¼ | NE ¼ |
| FOURMILE SPRING | SECTION: 24 | T. 11 N. | R. 47 E. | NW ¼ | NW ¼ |
| LOOKOUT SPRING | SECTION: 24 | T. 11 N. | R. 47 E. | SW ¼ | NE ¼ |
| HAYSTACK FLAT SPRING | SECTION: 28 | T. 11 N. | R. 47 E. | NE ¼ | SE ¼ |
| SUNDOWN SPRING | SECTION: 26 | T. 11 N. | R. 47 E. | NW ¼ | NW ¼ |

| PROOF NO.: | 04465 |
| --- | --- |

| | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ASPEN SPRING | SECTION: 31 | .T. | 12 N. | .R. | 48 E. | SW | ¼ | NW ¼ |
| DARK HORSE SPRING | SECTION: 31 | .T. | 12 N. | .R. | 48 E. | SW | ¼ | NE ¼ |
| SHEEP TROUGH SPRING | SECTION: 32 | .T. | 12 N. | .R. | 48 E. | SW | ¼ | SW ¼ |
| KINCAIDE SPRING | SECTION: 6 | .T. | 11 N. | .R. | 48 E. | SE | ¼ | SW ¼ |
| SLEET STORM SPRING | SECTION: 6 | .T. | 11 N. | .R. | 48 E. | SW | ¼ | NE ¼ |
| UNITED SPRING | SECTION: 8 | .T. | 11 N. | .R. | 48 E. | SE | ¼ | NE ¼ |
| STOEDICK SPRING #1 | SECTION: 8 | .T. | 11 N. | .R. | 48 E. | SE | ¼ | SE ¼ |
| STOEDICK SPRING #2 | SECTION: 8 | .T. | 11 N. | .R. | 48 E. | SW | ¼ | SE ¼ |
| KEOUGH SPRING | SECTION: 18 | .T. | 11 N. | .R. | 48 E. | NW | ¼ | NW ¼ |
| WEIR SPRING | SECTION: 17 | .T. | 11 N. | .R. | 48 E. | SW | ¼ | NW ¼ |
| GEORGE'S SPRING | SECTION: 17 | .T. | 11 N. | .R. | 48 E. | SE | ¼ | NW ¼ |
| NORWAY SPRING | SECTION: 17 | .T. | 11 N. | .R. | 48 E. | NE | ¼ | NW ¼ |
| NICHOLS SPRING | SECTION: 17 | .T. | 11 N. | .R. | 48 E. | NE | ¼ | NW ¼ |
| CLAYTON SPRING | SECTION: 17 | .T. | 11 N. | .R. | 48 E. | NW | ¼ | NW ¼ |
| GEORGE CAMP SPRING | SECTION: 17 | .T. | 11 N. | .R. | 48 E. | NE | ¼ | SW ¼ |
| TYBO SPRING | SECTION: 19 | .T. | 11 N. | .R. | 48 E. | NE | ¼ | NE ¼ |
| UPSET SPRING | SECTION: 19 | .T. | 11 N. | .R. | 48 E. | NW | ¼ | SE ¼ |
| GLOVER SPRING | SECTION: 19 | .T. | 11 N. | .R. | 48 E. | SW | ¼ | SW ¼ |
| MARSH SPRING | SECTION: 20 | .T. | 11 N. | .R. | 48 E. | NW | ¼ | NE ¼ |
| DANVILLE SPRING | SECTION: 20 | .T. | 11 N. | .R. | 48 E. | SE | ¼ | NE ¼ |
| CLINTON SPRING | SECTION: 30 | .T. | 11 N. | .R. | 48 E. | SE | ¼ | NE ¼ |
| TIGHTSPOT SPRING | SECTION: 30 | .T. | 11 N. | .R. | 48 E. | NE | ¼ | NE ¼ |
| WATERFALL SPRING | SECTION: 29 | .T. | 11 N. | .R. | 48 E. | NW | ¼ | NW ¼ |
| KAISER SPRING | SECTION: 29 | .T. | 11 N. | .R. | 48 E. | SW | ¼ | NW ¼ |
| HARDWAY SPRING | SECTION: 31 | .T. | 11 N. | .R. | 48 E. | NW | ¼ | NE ¼ |
| DUTCHMAN SPRING | SECTION: 31 | .T. | 11 N. | .R. | 48 E. | NE | ¼ | NE ¼ |
| UNCLE BILL'S SPRING | SECTION: 25 | .T. | 11 N. | .R. | 47 E. | SE | ¼ | NW ¼ |
| HARDROCK SPRING | SECTION: 25 | .T. | 11 N. | .R. | 47 E. | NW | ¼ | NE ¼ |
| SURVEYOR SPRING | SECTION: 25 | .T. | 11 N. | .R. | 47 E. | SE | ¼ | SW ¼ |
| ANDY'S SPRING | SECTION: 36 | .T. | 11 N. | .R. | 47 E. | NE | ¼ | NE ¼ |
| UPPER COFFEE POT SPRING | SECTION: 35 | .T. | 11 N. | .R. | 47 E. | NW | ¼ | SE ¼ |
| COFFEE POT SPRING | SECTION: 35 | .T. | 11 N. | .R. | 47 E. | SE | ¼ | SW ¼ |
| LAST CHANCE SPRING | SECTION: 35 | .T. | 11 N. | .R. | 47 E. | SW | ¼ | SW ¼ |
| SMOKEY SPRING | SECTION: 24 | .T. | 11 N. | .R. | 47 E. | NE | ¼ | SW ¼ |
| LOWER HAYSTACK SPRING | SECTION: 16 | .T. | 10 N. | .R. | 47½ E. | NE | ¼ | NW ¼ |

| PROOF NO.: | 04466 | SOURCE NAME | POINT OF DIVERSION 40 ACRE PARCEL DESCRIPTION | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CLAIMANT: | E. WAYNE & JEAN N. HAGE | | | | | | | | |
| | | TRAGEDY SPRING | SECTION: 33 | T. 11 N. | R. 48 E. | NW ¼ | NW ¼ | | |
| | | UPPER SCUFFE SPRING | SECTION: 31 | T. 11 N. | R. 48 E. | SE ¼ | SE ¼ | | |
| DRAINAGE AREA: | BARLEY CREEK AND TRIBUTARIES (MEADOW CANYON AND WIDOW SMITH CREEK) | LEE'S CAMP SPRING | SECTION: 32 | T. 11 N. | R. 48 E. | NW ¼ | SW ¼ | | |
| | | CAVENAUGH SPRING | SECTION: 12 | T. 10 N. | R. 47½ E. | SE ¼ | SE ¼ | | |
| | | SCUFFE SPRING | SECTION: 7 | T. 10 N. | R. 48 E. | NE ¼ | SE ¼ | | |
| USE: | STOCKWATER | HIDE OUT SPRING | SECTION: 8 | T. 10 N. | R. 48 E. | NE ¼ | SW ¼ | | |
| | | HOLD UP SPRING | SECTION: 13 | T. 10 N. | R. 47½ E. | SE ¼ | SW ¼ | | |
| | | WILSON SPRING | SECTION: 18 | T. 10 N. | R. 48 E. | SW ¼ | SW ¼ | | |
| PRIORITY DATE: | 1874 | RIM SPRING | SECTION: 19 | T. 10 N. | R. 48 E. | NW ¼ | NE ¼ | | |
| | | MERLINO SPRING | SECTION: 25 | T. 10 N. | R. 47½ E. | NW ¼ | NE ¼ | | |
| | | SWITCHBACK SPRING | SECTION: 30 | T. 10 N. | R. 48 E. | SE ¼ | SW ¼ | | |
| REMARKS: | STOCKWATER SOURCES FILED UNDER PROOF OF APPROPRIATION FOR IRRIGATION | RED ROCK SPRING | SECTION: 30 | T. 10 N. | R. 48 E. | NE ¼ | NE ¼ | | |
| | | SOUTH POINT SPRING | SECTION: 29 | T. 10 N. | R. 48 E. | SE ¼ | SW ¼ | | |
| | | LOWER HAYSTACK SPRING | SECTION: 16 | T. 10 N. | R. 47 E. | NE ¼ | NW ¼ | | |